## James Franklin v. The State.

### No. 603.　Decided June 22.

1. **Special Venire—Amendment of Return.**—It is allowable for the court to permit the officer's return on a special venire to be amended.

2. **Same—Contest Over the Return.**—Where, on a contest over the amended return of a special venire, evidence was adduced which showed that neither the sheriff nor his deputies, who were present, summoned the veniremen, but that they were summoned by other deputies, who made the report to the sheriff, *Held*, that such character of service was allowable, and no error is shown, it appearing that defendant did not exhaust his challenges, and that he was not forced to take an objectionable juror. Following Williams v. The State, 29 Texas Criminal Appeals, 89.

3. **Same—Statutes Directory.**—The provisions of the statutes relating to the summoning of a special venire are directory, and a failure to conform to them is not reversible error unless injury to the defendant be shown.

4. **Charge of Court—Reasonable Doubt—Refused Instruction.**—On a trial for murder, where the court charged the reasonable doubt as between the degrees, and further instructed the jury to acquit, if they did not believe beyond a reasonable doubt that defendant was guilty, *Held*, it was not error to refuse a request to charge "reasonable doubt" upon every phase of the defense.

5. **Murder—Charge—Self-Defense—Antecedent Threats and Malice.**—On a trial for murder, where the court in its charge on self-defense instructed the jury, that if defendant was not engaged in mutual combat with deceased, but deceased made the first attack upon him, or did any act from which defendant might reasonably infer or believe that his life was in danger, or that he was in danger of serious bodily injury, he was authorized to slay the deceased, *Held*, sufficient, and that it was not error to refuse a requested instruction, to the effect, that antecedent malice or threats on the part of defendant towards deceased would not deprive him of his right of self-defense.

6. **Same—Charge—Manslaughter.**—On a trial for murder, where the evidence in the case presents only two theories, murder or self-defense, it is not error to refuse to charge upon manslaughter.

Appeal from the District Court of Bastrop. Tried below before Hon. Ed. R. Sinks.

This appeal is from conviction for murder of the first degree, with punishment assessed at a life term in the penitentiary.

On July 5, 1894, the case being called for trial, defendant submitted a motion to quash the officer's return on the special venire writ, for the reasons: 1. That said return not only failed to show the diligence that had been used to summon four of the jurors, viz., John Ebner, J. D. Halmark, F. M. Phillips, and Gus H. Jones, as the statute expressly requires it should, but on the contrary, affirmatively showed that they had been "overlooked," and that no diligence whatever had

been used to summon them. 2. That said return not only failed to show that the summons was well made verbally, in person, upon all of the other jurors served, as the statute expressly requires, but on the contrary, it shows that they were served "in person or by notice." Upon this motion to quash being submitted, the court permitted the officer's return to be amended so as to show that the jurors who had been summoned had been summoned verbally and in person, and this amended return being contested by defendant, the court, after hearing the evidence submitted thereon, held the return and amended return insufficient as to the four jurors mentioned as overlooked, but over-ruled the motion to quash, which was duly excepted to by defendant.

The testimony relative to the service and return of the special venire is as follows:

H. N. Bell testified: "I am a deputy sheriff of Bastrop County, and made out the return on the special venire herein, and signed the name of G. W. Davis, sheriff Bastrop County, Texas, by H. N. Bell, deputy, thereto. I have no personal knowledge as to whether the special veniremen herein were served in person or not."

J. H. Fitzwilliam testified: "I am a deputy sheriff of Bastrop County, and had charge of the special venire and of the summoning of the veniremen, and made the amended return herein. I have no personal knowledge of the manner in which the several veniremen were summoned in this case, and can not state on my own knowledge in what way they were summoned."

J. E. Woods testified: "I am one of the special veniremen in this case. I received a written notice that I was summoned as a special venireman in this case. [Which notice witness produces in court, being a notice to witness that he had been regularly drawn as a juror in the case pending, and ordering him to appear at the court house in Bastrop on July 5, 1894, and signed 'G. W. Davis, sheriff Bastrop County, Texas, by Glenn Jackson, deputy.'] This notice was not handed or given to me by Glenn Jackson or by any officer, but was handed to me by G. W. Woods, who is not an officer. He (G. W. Woods) said, that Glenn Jackson handed it to him and asked that he hand it to me, which he did. I received no other summons than this."

While the record is quite voluminous, the facts as to causes which brought about and circumstances immediately attendant upon the killing, may be summed up very briefly as follows: The parties to the killing were both negroes; the killing occurred on Wednesday morning, May 17, 1894, at an early hour, in the road, near defendant's house. Defendant and deceased, Jim Brock, were neighbors; had been friends and neighbors for some eighteen years. No serious disturbance of any kind had ever occurred to mar their friendship up to a very short time before the difficulty; though it does appear from the evidence, that on the Christmas before there was some talk in the community about an undue intimacy between defendant and the wife of deceased. On account of this talk, deceased asked defendant not to come to his

house any more, but there was no unpleasantness between them on account of this matter, and deceased told defendant that he did not believe there was any truth in the reports; and the wife of deceased, as a witness in the case, denounced these reports as vile slanders which were wholly untrue. A week or more prior to the killing deceased lost his horse. He offered to give defendant $5 to hunt for and return it to him. Defendant brought the horse to him a few days thereafter, saying he had found him with Tom Nevils' horse on Green prairie. Deceased did not have the money, and did not pay him at that time. Defendant sent to deceased's store to get some things on the $5, but deceased refused to let him have them; because, he said, Tom Nevils had told him that defendant did not get his horse on Green prairie with his (Nevils') horse; and that defendant was a liar when he said so. Deceased said, that "he would not pay defendant unless defendant could eat up the moon and stars, or satisfy him that he found the horse with Nevils' horse." It was proved, that upon hearing this defendant threatened to kill him if he did not pay him. On Tuesday night before the killing the parties met at the house of Ella Shaw, defendant having his gun with him. They did not speak to each other. Defendant staid about fifteen minutes and then left. A short time after, deceased and Ella Shaw and her son started to go over to the house of deceased, and Ella and her son testified, that on the way they saw defendant on the road side squatted down behind some bushes, and as they approached heard the hammer of his gun click, as though he was cocking it. That when Ella hallooed, defendant walked on off, and deceased said to him, "I will indict you for this in the morning," and defendant said, "I dare you to."

Next morning early deceased went out to hunt his cow, taking his gun with him. About the same time defendant also left his home, saying he was going hunting. They met in the road near defendant's house, and immediately a quarrel ensued, but what was said by them was not heard by any one, though one or two witnesses testify to seeing them and hearing them quarreling, and to having seen the shooting. These witnesses say that defendant shot first; and some say deceased then fired and that defendant fired a second shot. Defendant in his testimony says deceased fired first. Defendant was not struck. Deceased was shot through the body, and had his right arm broken. Emma McMahon testified, that she heard the shooting; ran there; put deceased's head in her lap, and asked him how the shooting began. And he said, "I was driving my cow along, and when I got here the argument began, and then the shooting began; and I shot, too, as I was falling. The first shot struck me in the side and the next in the arm."

*Orgain & Garwood* and *J. P. Fowler*, for appellant.—1. The court erred in overruling defendant's motion to quash the officer's return of the special venire. The original return showing that the jurors had not been legally served, and it appearing from the evidence that the

officer making the amended return had no personal knowledge as to how the jurors were served, and it appearing that at least one juror served was not served verbally in person, as the law expressly requires, and there being no evidence before the court to show how the others had been served, the motion to quash should have been sustained. Code Crim. Proc., arts. 613, 614.

2. The court erred in refusing to deliver to the jury, as part of the law applicable to the case, and demanded by the evidence, special charge number 1 requested by defendant, which is as follows: "If you have any reasonable doubt from the evidence as to whether the defendant voluntarily entered into a combat with deadly weapons with the deceased at the time of the killing, and also have a reasonable doubt as to whether the defendant, by words or acts at the time of the killing, intentionally brought on the difficulty between deceased and the defendant, and also have a reasonable doubt as to whether the deceased did first shoot at or was in the act of shooting at defendant, before defendant made any demonstration manifesting an immediate intention to shoot at him, you will acquit the defendant on the ground of self-defense, although you should believe from the evidence that the defendant did previously threaten to take the life of the deceased, and was also seen at night on the road from Ella Shaw's residence to deceased's residence, under circumstance indicating he was there with the intention to carry such threats into execution."

As there was evidence tending to show that defendant did threaten the life of the deceased, and also tending to show that the killing was in necessary self-defense, this special charge should have been given to the jury, in order that they should be fully and clearly informed that it was their duty to acquit defendant, if they believed he acted in necessary self-defense, although they should also believe that he did threaten the life of deceased. White v. The State, 23 Texas Crim. App., 154; Parker v. The State, 18 Texas Crim. App., 72; Smith v. The State, 15 Texas Crim. App., 338.

There is evidence in this case tending to show that the offense is not of a higher grade than manslaughter, and the omission to submit this issue, over defendant's objections, and the refusal to give the special charge submitting the issue requested by defendant, is reversible error. Sowell v. The State, 32 Texas Crim. Rep., 482; Spivey v. The State, 30 Texas Crim. App., 343; Baltrip v. The State, 30 Texas Crim. App., 545; Bracken v. The State, 29 Texas Crim. App., 367; Bonner v. The State, 29 Texas Crim. App., 230; Meuly v. The State, 26 Texas Crim App., 307; Wadlington v. The State, 19 Texas Crim. App., 266; Neyland v. The State, 13 Texas Crim. App., 536.

*R. L. Henry*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant in this case was tried and convicted for murder of the first degree, and his punishment assessed

at confinement in the penitentiary for life, and from the judgment and sentence of the lower court he prosecutes this appeal.

The first question presented for our consideration is the refusal of the court to quash the special venire on motion of the appellant. The grounds of said motion were as to four of said jurors. The sheriff showed that they were not summoned, but did not show what diligence he used in order to get service on them, and that said return not only failed to show that the summons was made verbally, in person, upon all the other jurors served, but on the contrary, it shows that they were not served in person, but by notice. On the submission of the motion the court permitted the officer's return to be amended so as to show the persons summoned, and that they had been summoned verbally and in person. Said return, as amended, was contested by the appellant. After hearing evidence, the court sustained the return, and defendant excepted.

It was allowable for the court to permit the officer's return to be amended. Murray v. The State, 21 Texas Crim. App., 466; Powers v. The State, 23 Texas Crim. App., 42; Rodriguez v. The State, 23 Texas Crim. App., 503; Williams v. The State, 29 Texas Crim. App., 89. The record shows, that after the return was amended, on a contest of the return, evidence was adduced which showed that neither the sheriff nor his deputies then present made the summons of the special veniremen, but the same was made by other deputies, who reported to the sheriff. Under the rule laid down in the Williams case, 29 Texas Criminal Appeals, 89, this character of service was allowable, it being shown in this case that the defendant did not exhaust his challenges, and that he was not forced to take any objectionable juror. As to the four jurors not served, the court stated, that if the defendant desired he would issue attachments for said jurors, which they did not demand; and as to the juror Woods, the only one shown to have been served by a written notice and not in person, he was excused by the court. So far as the record discloses, all the special veniremen who were summoned responded to the summons by appearing in court, and it was permissible, if they had not been summoned properly by an officer, for the counsel of defendant to examine each of said jurors on his voir dire as to the character of service made on them. This does not appear to have been done. No injury appears to have resulted to the defendant from the course pursued, and as was said in Murray v. The State, supra, the provisions of the statute relating to the summoning of a special venire are directory only, and the failure of the trial court to conform to them is not reversible error unless injury to the defendant be shown, which, as stated before, was not done in this case.

The defendant in this case requested the court to charge "reasonable doubt" upon every phase of his defense. The court gave a succinct and pertinent charge on the defendant's right of self-defense, as presented by the evidence in the case, and a charge was given on

reasonable doubt as between the degrees of murder, and the jury were instructed, that if they did not believe beyond a reasonable doubt that the defendant was guilty of the charge they would acquit him; and it was not error for the court to refuse to give the special charge asked by defendant.

The appellant also asked the following charge: "If you believe from the evidence that there was malice on part of the defendant towards the deceased at the time of the killing, which was evidenced by former grudges, menaces, and threats, but that deceased did first shoot at, or attempt to shoot at, defendant, under such circumstances as would justify defendant, on the ground of self-defense, in taking the life of deceased, if it had not been for such malice; and if you are unable to determine from the evidence whether defendant took the life of deceased because of such malice, or because of the provocation arising at the time of the killing, tending to show justification on the ground of self-defense, you will attribute the killing to such provocation tending to show self-defense, and find the defendant not guilty." The court's charge on self-defense, as before indicated, clearly stated to the jury, in apt phraseology, and responsive to the facts in this case, that if the defendant was not engaged in a mutual combat with the deceased, but the deceased made the first attack on him, or did any act from which the defendant might reasonably infer or believe that his life was in danger, or that he was in danger of serious bodily injury, he was authorized to slay the deceased. This presentation of the law clearly eliminated from the jury any malice or threats that the defendant may have entertained or expressed towards the deceased prior to the homicide, because said charge authorized them to acquit on such hostile demonstration on the part of the deceased, regardless of any anterior facts or circumstances, and this, in our opinion, was sufficient.

The appellant claims, in this case, that the court committed an error in failing to charge on manslaughter. We have carefully examined the record to see if there was anything in the facts calling for a charge on this branch of the law, and there is nothing to have required the court to so charge. The evidence on the part of the State presents two theories—either murder of the first or second degree; and the evidence for the defense presents the theory of self-defense. The court gave these phases of the case fully and fairly in charge to the jury, and the jury found the defendant guilty of murder in the first degree. The evidence, in our opinion, is sufficient to sustain that verdict, and the judgment of the lower court is accordingly affirmed.

*Affirmed.*

Judges all present and concurring.