## Felix R. Jones v. The State.

### No. 5054. Decided June 25, 1919.

#### 1.—Murder—Co-Defendant—Witnesses—Immunity—Dismissal—Severance.

Where, upon trial of murder, a severance was granted, and the cases of the defendant's co-defendants were set to be tried first, but when the cases were reached the State dismissed both, and defendant placed both on the witness stand, where they claimed their constitutional right and refused to give evidence which might incriminate them, whereupon they were excused over defendant's objection who insisted that the State had no right to dismiss the indictment against them unless they were granted immunity from further prosecution, there was no reversible error. Following Brown v. State, 42 Texas Crim. Rep., 176, and other cases, overruling Puryear v. State, 50 Texas Crim. Rep., 454.

#### 2.—Same—Rule Stated—Co-Defendant—Dismissal—Witness.

It is not the fact that the parties may have acted together as principals, etc., in the commission of the offense that disqualifies them as witnesses, but it is the fact that they are charged with the commission of the same offense which disqualifies them as witnesses, and in the language of Article 791, Vernon's Criminal Statute, Volume 2, p. 71, the dismissal of the charge will remove the disqualification, and so will their acquittal.

#### 3.—Same—Statutes Construed—Privilege of Witness—Rule Stated.

There is nothing in the terms of the statute which destroys the witness's privilege to refuse to testify upon dismissal of the indictment against him, and nothing that the court discerns which imposes upon the State the obligation to grant him immunity as a condition precedent to dismissing the case. Following Hobbs v. States, 53 Texas Crim. Rep., 74, and other cases.

#### 4.—Same—Case Stated—Severance—Co-Defendants—Privilege of Witness—Dismissal.

When the prosecuting attorney, with the consent of the court, dismissed the indictment against the defendant's co-defendants, there being nothing to establish bad faith in the proceeding, they pursued a course expressly authorized by the statute, and a method prescribed thereby for restoring their competency as witnesses for the defendant.

#### 5.—Same—Special Venire—Filing—Seal—Practice in District Court.

There was no error in placing the file mark and seal upon the venire list with the court's consent, in the absence of a showing to the contrary that the amendment was not properly made. Following Washington v. State, 8 Texas Crim. App., 377, and other cases.

#### 6.—Same—Special Venire—Return of Writ.

Where the sheriff's return showed that a number of the veniremen had moved out and could not be found after diligent search, and no evidence was introduced to disprove the same, there was not reversible error.

#### 7.—Same—Special Venire—Writ—Diligence.

Where it appeared from the record on appeal that the special veniremen who were summoned appeared, and were either excused or passed upon in selecting the jury, and a sufficient number appeared to select the jury, although many of the veniremen could not be found, there was no such want

of diligence which justified the quashal of the writ. Following Taylor v. State, 14 Texas Crim. App., 351, and other cases.

### 8.—Same—Postponement—Service of Veniremen.

There was no error in refusing to postpone the case until the sheriff had used proper diligence to bring into court every possible venireman, the court directing the officer to bring in all of the list of men he could find, etc., and thereupon proceeded with the selection of the jury.

### 9.—Same—Evidence—Memoranda—Note Book—Constitutional Law.

Upon trial of murder, there was no error in admitting in evidence the memoranda from a note book found on the person of the defendant at the time of his arrest, on the ground that this violated his constitutional right to give evidence against himself.

### 10.—Same—Evidence—Conspiracy—Acts of Co-conspirators.

Where, upon trial of murder, the State claimed that the defendant and his co-defendants acted together in taking the life of the deceased, and carried him away in an automobile, there was no error in admitting testimony that this automobile was hired by one of the co-defendants and was in his possession and returned by him and to show that it had human blood and hair on it similar to that found near the body of the deceased. Following Taylor v. State, 3 Texas Crim. App., 169, and other cases.

### 11.—Same—Evidence—Inspecting Document—Rule Stated.

Where defendant made a motion to be allowed the privilege of inspecting the document upon which the handwriting was compared by an expert, which the court refused and it was shown that all these documents had been used and examined before in an examining trial, and that besides, opportunity to inspect was tendered to defendant's counsel who did not avail himself thereof, there was no reversible error. Following. Green v. State, 53 Texas Crim. Rep., 490.

### 12.—Same—Argument of Counsel—Allusion to the Defendant's Failure to Testify.

Where it was contended that the argument of State's counsel constituted an implied reference to the failure of the defendant to testify, but the record on appeal showed that this argument could have been based upon the facts in evidence, there was no reversible error. Following Ethridge v. State, 74 Texas Crim. Rep., 635, and other cases.

### 13.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions failed to disclose the relevancy of the answers sought, or the relation of certain testimony to the instant case, there was no reversible error.

### 14.—Same—Rehearing—Severance—Codefendants—Dismissal—Immunity.

The rule contended for by appellant, that the grand jury having indicted the codefendants of the same offense in the same indictment under which the defendant was tried, and a severance having been granted, and the order of trial fixed whereby the case of each of the codefendants was set in advance of that of the defendant, that the State was powerless to try the defendant until after each of the codefendants had been either tried, or upon their dismissal had been given immunity from further prosecutions for the same offense, is untenable and is neither within the letter nor the spirit of the law.

15.—Same—Evidence—Circumstantial Evidence—Charge of Court.

Where, upon trial of murder, the case was tried upon the view that the State's testimony consisted alone of circumstantial evidence, and the defendant was given the benefit of a charge on the law of circumstantial evidence, circumstances were admissible in evidence which tended to prove the issue, and incidents are legitimate, which would be irrelevant depending upon direct testimony, and this, independent of the question as to whether a conspiracy existed, and the testimony with reference to the condition of the automobile, the hair and blood found thereon, etc., was admissible both as direct evidence and under the question of conspiracy, and the evidence being sufficient to sustain the conviction, there was no reversible error.

Appeal from the District Court of El Paso. Tried below before the Hon. W. D. Howe.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*M. Scarbrough, J. E. Parsen* and *L. A. Dale* for appellant.— On question of severance; Manor v. State, 77 S. W. Rep., 786, and cases cited in opinion.

On question of special veniremen; Clay v. State, 51 S. W. Rep., 370; Chandler v. State, 60 Texas Crim. Rep., 329, 131 S. W. Rep., 598; Osburne v. State, 23 Texas Crim. App., 431; Foster v. State, 38 Texas Crim. Rep., 525; Kellum v. State, 33 id., 82; Jones v. State, 33 id., 617.

*E. A. Berry*, Assistant Attorney General, for the State.

MORROW, Judge.—This conviction is for murder. Appellant, Felix R. Jones, T. J. Coggin and Millard Coggin were jointly indicted for the murder of Tom Lyons. A severance was ordered on application, and the order of separate trials of each of the indictees was made, whereby the trial of T. J. Coggin was to be had first, that of Millard Coggin second, and that of appellant Jones thereafter. The application for severance was upon the ground that it was believed that there was not evidence sufficient to convict either of the Coggins, and that their testimony would be material to the appellant. When Thomas Coggin's case was called for trial it was dismissed by the court upon the application of the prosecuting attorney, Coggin objecting and demanding a trial, and when the case of Millard Coggin was reached a like proceeding took place. Each of the Coggins was successfully put upon the stand as witnesses for the defendant, and each of them declined to give testimony upon the ground that they anticipated a renewal of the prosecution against them, and that any evidence given in behalf of the appellant might be used against them in a trial of their own cases, and the court, recognizing their right under the Constitution to refuse to give evidence which might incriminate them, permitted them to be excused from testifying over

the appellant's objection, he insisting that the State had no right to dismiss the indictments against them unless that at the same time they were granted immunity from further prosecution for the homicide so that there would be no impediment to the court requiring them to testify in appellant's case. The refusal of the court to accede to this proposal which was urged in an application to postpone is made the basis of complaint by a proper bill of exceptions. The question is one upon which the decisions of this court are not in harmony. In Brown v State, 42 Texas Crim. Rep., 176, the correctness of appellant's contention was by a divided court denied. In that case the witness against whom the prosecution was dismissed testified in behalf of the accused, but the appellant therein complained that immunity was not given to the end that he might have had the testimony of the witness unaffected by the suspicion and the danger of subsequent prosecution. In Manor's case, 45 Texas Crim. Rep., 370, the joint indictee after the dismissal was immediately rearrested upon complaint charging him with the same offense, the complaint having been prepared before the dismissal was entered. The witness refused to testify, and the court held that the proceeding disclosed reversible error. To substantially the same effect is the ruling in Smith v. State, 55 Texas Crim. Rep., 326. In that case and the Manor case the court, judging from expressions therein, was controlled by the view that the dismissals were not made in good faith, and that by immediately following them with complaints there was displayed an attempt to evade the statute on the subject of severance, which the court was unwilling to sanction. In the Puryear case, 50 Texas Crim. Rep., 454, the court held that the dismissal of the indictment against the co-defendant was ineffectual to defeat the serverance unless the dismissal was accompanied with immunity, the court expressly overruling the former decision in Brown v. State, 42 Texas Crim. Rep., 176. In Puryear's case the witness did not testify, though he was rendered to the appellant by the State, appellant declining to use him because of the failure of the State to grant him immunity. In Hobbs' case, 53 Texas Crim. Rep., 74, the Puryear case was overruled, and the Brown case re-affirmed. In that case the parties against whom the prosecution was dismissed were not called as witnesses by either the State or the defendant. The case of Hobbs v. State, *supra,* has been followed in Johnson v. State, 197 S. W. Rep., 996, and Streight v. State, 62 Texas Crim. Rep., 453. In Johnson's case the witness was not used by either party, and no effort was made to use him by the defendant.

Article 791, Vernon's Crim. Stats., Vol. 2, p. 721, is as follows: ''Persons charged as principals, accomplices or accessories, whether in the same indictment or different indictments, cannot be introduced as witnesses for one another, but they may claim a severance; and, if any one or more be acquitted, or the prosecution against them be dismissed, they may testify in behalf of the others.''

This statute, in the opinion of the writer, declares the law applicable to the matter before us in terms quite definite. It furnishes a rule of evidence under which persons charged as principals are not competent witnesses for each other, and it defines the means whereby the competency may be restored. It is not the fact that they may have acted together as principals in the commission of an offense that disqualifies them, but it is the fact that they are charged with the commission of the same offense. It is the charge which disqualifies them, and in the language of the statute the dismissal of the charge will remove the disqualification. So, the acquittal will remove it. When an order of severance is made the State has the option to proceed with the trial of the one first in order. If he is convicted, he is not a competent witness for his co-defendant. If he is acquitted, he becomes a competent witness, because the charge against him is removed by the acquittal. The State by exercising its option to dismiss the prosecution removes it, and thereby destroys the disqualification of the witness. When the prosecution is dismissed, the status of the witness is the same as though he had never been charged with the offense. If he had been put upon the witness stand before he was charged he could, if conscious of guilt, or if he felt that there was suspicion against him, and that his testimony might be used to incriminate him, refuse to testify. There is nothing in the terms of the statute which destroys his privilege to refuse to testify upon dismissal after indictment, and nothing that we discern which imposes upon the State the obligation to grant him immunity as a condition precedent to dismissing the case. Underhill on Ev., Sec. 70.

Article 37, C. C. P. establishes the right of the prosecuting officers to dismiss, with the consent of the court, and we find nothing in any other provision of the statute which modifies the terms upon which the dismissal may be entered defined in the article mentioned.

Article 727, C. C. P., does not, in the opinion of the writer, change the rule of the evidence with reference to the competency of witnesses, which rule is declared in Article 791, *supra,* but furnishes a method of procedure by which, when there are several charged with the same offense by separate indictments, and a severance is sought, the order of trial may be fixed. See Clark v. State, 81 Texas Crim. Rep., 157, 194 S. W. Rep., 157, and Hobbs v. State, 53 Texas Crim. Rep., 75.

Our opinion is that when the prosecuting attorney, with the consent of the court, dismissed the indictment against the appellant's codefendants, there being nothing to establish bad faith in the proceeding, that they pursued a course expressly authorized by the statutes of the State, and pursued a method prescribed thereby for restoring the competency of the Coggins as witnesses for the appellant, which competency had been impaired under the terms of the same statute when they were indicted.

There are bills relating° to the special venire. The file mark and seal were left off the venire list, and with the court's permission the omission was supplied, and in the absence of evidence to the contrary we assume that the amendment was properly permitted. Washington v. State, 8 Texas Crim. App., 377; Rodrequez v. State, 23 Texas Crim. App., 503.

The return showed service on 201 veniremen; 123 of these were served by notice over telephone, 78 by written notice, 30 not served because names not found in directory, 3 dead, 5 in the army, 36 out of the city, and 224 moved and not found after diligent search, followed by the general statement that "diligent search and inquiry to find and summon each of the veniremen herein returned unserved; has consulted the city directory, and persons who might know concerning the absent veniremen, but has been unable to find out further than above stated."

No evidence was introduced to disprove the correctness of the statement made, or to show that any of the unserved veniremen could have been found. The court knows judicially that El Paso, the place of the trial, is a large city situated on the border of the State; that veniremen are not listed by jury commissioners, but are listed by drawing from a wheel the names of taxpayers, see Art. 664, C. C. P., and in the course of the matter the judge stated that the proportion of jurors present was not unusual under existing conditions, which we infer related to the fact that the war affected the situation.

In the motion it is stated that "out of the 500 persons named in the venire list only 200 men were summoned, and approximately 100 have been excused for good cause," leaving only approximately 100 men from whom to select the jury, from which the judge (and we find nothing in the record to the contrary), that the veniremen who summoned appeared, and either excused for good cause, or were passed on in selecting the jury. We do not regard the facts disclosed as showing a want of diligence justifying the quashal of the writ on that ground. Taylor v. State, 14 Texas Crim. App., 351; Parker v. State, 33 Texas Crim. Rep., 111; Martin v. State, 38 Texas Crim. Rep., 462; Rodriquez v. State, 23 Texas Crim. App., 506; Lewis v. State, 15 Texas Crim. App., 647; Hall v. State, 28 Texas Crim. App., 146; Keets v. State, 76 Texas Crim. Rep., 384, 175 S. W. Rep., 149.

In the absence of proof of lack of sufficient diligence, the rule is stated that to require the court to quash the venire on account of non-service on a part of the list, the accused must be able to show that the number of jurors available under the venire was insufficient to enable him to obtain an impartial jury. Charles v. State, 13 Texas Crim. App., 664; Parker v. State, 33 Texas Crim. Rep., 111. In Chandler's case, 60 Texas Crim. Rep., 329, there is intimation that the facts there would have justified the quashing of the list. That was an extreme instance as it was necessary to select the jury from

talesmen. "Where a veniremen appears though irregularly summoned, or in fact not summoned at all, the irregularity or omission will be deemed immaterial since his attendance, which is all that the service of process would effect and which is its object has been attained." 12 Vol. Am. & Eng. Ency. of Plead. & Prac., p. 343, and cases in note. The absence of veniremen irregularly summoned might infringe the rights of an accused, Clay v. State, 51 S. W. Rep., 370, but where as in this case they obey the irregular process, they are available to the same degree that would have been the case had they been regularly summoned. It appearing that the jurors summoned responded, and that after eliminating those properly excused for good cause, there remained about 100 veniremen, and that in selecting the jury the appellant did not exhaust his peremptory challenges, and no objectionable juror having been forced upon him, there was no error in overruling the motion. Franklin v. State, 34 Texas Crim. Rep., 625; Williams v. State, 29 Texas Crim. App., 89.

After the motion to quash the venire was overruled, appellant requested the court to direct the sheriff to use due diligence to bring into court every possible venireman, and to postpone the case until he had done so. The court refused to postpone, but directed the sheriff to bring in all of the list of men he could find, and proceeded with the selection of the jury, and after the list of men served by telephone was exhausted, the court asked counsel for appellant if the part of his motion to quash which related to the jurors who had been summoned by written notices would be waived, and after receiving the reply that the original motion to quash the venire in its entirety was insisted on, the court sustained the motion so far as it concerned the jurors present at that time in response to written notices. The sheriff then resummoned these men, making a supplemental return showing such service, and a copy of the list thus resummoned was served on the appellant. He objected to them on the theory that it was a new list summoned after the trial begun.

The appellant having requested the court to direct the sheriff to continue his efforts to summon the men designated on the panel who had not been served, cannot, we think, justly complain of the service by the sheriff of all men found on the list, including those taken from the list of summoned jurors in response to appellant's motion to quash on the ground that they were irregularly served. The court, however, in our opinion, was not required to sustain the motion of appellant relating to jurors who were irregularly served but present in court in obedience to the venire writ. This being true, the men who were upon the subsequent list complained of were available to appellant at the beginning of the trial and on his original list of served jurors. This is not a case of failure of the court to bring in an absent juror who had been served, or to delay, awaiting an attachment for one as in Osborne's case, 23 Texas Crim. App., 431.

Tom Lyons was a citizen of New Mexico, a large land and cattle owner, residing near Silver City. He left his home on the morning of the 17th of May and arrived at El Paso about ten o'clock the same night. There is evidence that he was met at the depot on his arrival by the appellant who told Lyons that he was looking for him, that he had his car and would drive him up; that Lyons and appellant got in the car in which there was another person, the driver. On the following morning about eleven o'clock Lyons' dead body was found in a ravine near the city of El Paso, but outside the city limits. Near the body his grip was found; also a small box with sand in it, which was bloody. The road ran near the ravine and there was automobile tracks and some drops of blood in the road. Some distance from the body there was found a bar of iron on which there was blood and hair. There was a wound on the back of the head, one across the nose and one across the ears. There were also grap hairs upon the box. Lyons was an aged man; his hair was gray. He had some $65 on his person when he left his home and on his body only one small coin was found. Altogether, there were some fifteen wounds on the body about the head. The skull was fractured: the knuckles were skinned and the wrists were bruised as though held tight and tied.

Appellant resided in Ft. Worth, Texas. There was evidence that he had been at the home of deceased on two occasions, a few days before the death of Lyons and was negotiating with him for the purchase of cattle; that he represented his name as Brown, and his residence Ardmore, Okla. He had stopped at a hotel in El Paso, and from that city on the day of the homicide there was evidence that he had telephoned to the deceased making an appointment with him to come to El Paso and close a cattle deal.

The State introduced a witness who testified that on an occasion two or three days after the death of Lyons, that by appointment he met the appellant at Colorado City, Texas, and appellant there told the witness that he had killed Lyons; that he met him in an automobile at a depot and made a pretext to stop the car at a dark street, hit him over the head with a hammer and beat him over the head with a piece of iron, carried him to the edge of town and threw him out. That he used a box with dirt in it to keep the blood off of the automobile, and the witness said appellant exhibited to him $565.35, stating that he got the $500 from Tom Coggin and the other amount from deceased after he killed him; that he was to get $2000 for the job; that Coggin had paid him $500 and that he told witness he wanted him to collect the balance.

The appellant was arrested at Beaumont, Texas, and from his person the sheriff who arrested him took a note book containing some memoranda as follows: "Glen Roso, N. M. 16 miles to T. J. Coggin's ranch." "Mr. Coggin, 2715 Montana Street, El Paso," Also partially erased, the following: "2202 Garage."

White, a witness for the State testified that late in the evening of the 17th of May he rented a Buick automobile to Millard Coggin; that the automobile was returned by Millard Coggin on the 19th of May and driven by him on the wash rack. The rug had been cut out except stripes under the foot-rest. Coggin paid for the use of the car. Dr. Waite, an expert chemist testified that he made an examination of the automobile mentioned and found spots and hair upon it, and that the spots were human blood. That he also made tests of the stains on the box and iron bar found near the body of deceased with the same result. That he also made an examination of the hair on these articles, and in comparison with that found upon the automobile, that they were of the same appearance and same measurement; that they were mostly white with a few dark hairs mixed in; that he could not say whether there were any dark hairs on the curtains of the automobile but there were in the box. There was evidence that on the day after the homicide appellant was seen in an automobile some fifty miles from El Paso in company with Millard Coggin.

Objection was made to the introduction in evidence of the memoranda from the note book referred to, upon the ground that its introduction was in violation of the constitutional guarantee against requiring one accused of crime to give evidence against himelf. We have been referred to no authorities supporting the proposition nor have we found such. Numerous instances, in which on the arrest of one accused of crime, there having been taken from his possession articles pointing to his guilt, and proof of that fact admitted in evidence, are found in the reports. For example, proof of the fact that there was found property recently stolen in possession of the accused person. And instances in which the same rule has been applied to documents are not wanting. He was not required to "produce" the memorandum book nor to "give evidence" of its contents. It was found in his possession in a lawful search of his person or his baggage. Starchman v. State, 62 Ark., 540, 36 S. W., 940; State v. Griswold, 67 Conn., 306, 34 Atl., 1047; Williams v. State, 100 Ga., 518; Siebert v. People, 143 Ill. 582; State v. Pomeroy 130 Mo., 498, 32 S. W., 1004; Gindrat v. People, 138 Ill., 107; State v. Arkinson, 40 S. C., 372; State v. Van Tassel 103 Iowa, 15; State v. Davis, 108 Mo., 668. In Renfro v. State, 42 Texas Crim. Rep., 393 a communication in writing, written by the accused and intended for delivery to his attorney, found in his possession, was held not privileged.

The evidence showing that the automobile was hired by Coggin, was in possession of and returned by him, its condition when returned, the fact that it had human blood and hair on it similar to that found on the box and iron bar that were found near the body of deceased, was objected to on the ground that it was hearsay.

The theory advanced by the State that the homicide was the con-

summation of a conspiracy to which the appellant and Coggin were parties was supported by the appellant's confession testified to by the witness Clark and by various circumstances, some of which have been mentioned. The issue of conspirators being raised by the evidence, the acts of the co-conspirators in furtherance of the common design or in which they are found in possession of the instruments used in committing the crime, are admissible against the accused on trial though he was not present at the time the acts were done, and this rule applies to circumstantial evidence as well as to direct evidence. There being direct evidence that appellant killed deceased and robbed him and that he was hired to do so by Coggin; that he induced the deceased to come to El Paso on the occasion of his death, that he ment him at the train and induced him to enter the automobile which was under the control of appellant and his companion, it would have been compatible with the rules of evidence to support its theory that the appellant and Coggins were co-conspirators in the crime by the declaration of Coggin during the conspiracy of after the conspiracy while he was in possession of the automobile, provided his declaration connected the automobile with the homicide; and it was likewise permissible to adduce circumstances from which the jury might legitimately draw the conclusion that appellant's companion in the automobile was one of the Coggins; that the automobile was obtained in pursuance of the conspiracy, that it was used in committing the murder, that it was returned by Coggin bearing the marks of the crime. Taylor v. State, 3 Texas Crim. App., 169; O'Neill v. State, 14 Texas Cr. App., 582, and other cases listed in Branch's An. P. C., sec. 694; and Pearson v. State, 18 Texas Cr. App., 561, and other cases listed in the third subdivision of Art. 695. Branch's An. P. C.; Wharton's Crim. Ev., vol. 2, Tenth Edition, secs. 917 and 919; Underhill on Crim. Ev., sec. 492.

The State introduced a hand-writing expert to compare the handwriting in certain documents which were used in evidence. The appellant made a motion to be allowed the privilege of inspecting the documents, and the action of the court in overruling it made the subject of complaint. Qualifying the bill, the court states that all of the documents had been used in evidence at the examining trial, that opportunity to inspect them was tendered appellant's counsel at the time the motion was made, and the understanding was had that the witness would be held to the conclusion of the trial and that the trial continued in progress for nearly a week thereafter and no further demand was made and no experts introduced to contradict. As qualified, the bill discloses no error, though generally an inspection of such documents when demanded, should be afforded. Green v. State, 53 Texas Crim. 490, 22 L. R. A. (N. S.) 706.

Counsel for the State, in argument said: "I don't know what took place in that automobile. Men who commit those crimes don't talk; but one of the men that was in that automobile is dead." This

is claimed to be a comment upon the failure of the appellant to testify, inhibited by article 790, C. C. P. The court is qualifying the bill says that the language used in connection with the argument with reference to the bruises on the wrists of deceased, counsel stating that he did not know whether they were caused by tieing the wrists or tightly holding them. There was testimony that there were three men in the automobile at the time it left the depot, deceased and two others. A theory deducible from the evidence is that one of the others was Coggin and one of them appellant. The Coggins were introduced as witnesses for the appellant but refused to give further testimony than to state their names, residences and the fact that they indicted for the same offense. Appellant also introduced in evidence the dismissal of the prosecution against them.

Touching the argument which it is contended constitutes an implied reference to the failure of the accused to testify, the rule which appears to have been established is that the implication must be a necessary one, and where, as in this case, there is evidence or an absence of evidence other than the testimony of the accused to which the remarks may have reasonably been applied by the jury, and the remark is not reversible error. Wooten v. State, 50 Texas Crim. Rep., 151.; Pullen v. State, 70 Texas Crim. Rep., 156; Taylor v. State, 76 Texas Crim. Rep., 642; Ethridge v. State, 74 Texas Crim. Rep. 635.

Looking to the remarks of counsel in its application to the record, it appears that there was evidence that there were two men in the automobile other than the deceased. The State contended that one of them was Coggin. He had been introduced as a witness, but had given no testimony upon the subject of the occurrences in the car. There were introduced in evidence no admissions from him that he was in the car or had part in the homicide. He had not talked either upon the stand or elsewhere so far as the record shows. The appellant, on the contrary, while he did not testify as a witness had, according to the record, talked to the witness Clark, and in talking to him had admitted his presence in the automobile in which the deceased was killed and his participation in the homicide. The State was contending that while Clark's testimony was controverted, that his statement that the appellant talked to him about the homicide was true. The contention of the State that the appellant did talk to Clark was the central fact in the State's case. If the jury interpreted the remark of counsel complained of as applicable to the appellant, such application would have been in conflict with the theory of the State as to the truth of Clark's evidence. This, it appears, would have been an unnatural application of it. On the contrary, its application to Coggin, whom the State contended was in the car and whose silence both in and out of court was conspicuous, would have been in conflict with no theory of the State and would not have been an unnatural or unreasonable application of the remarks.

It appears from a bill of exception that the deceased owned large irrigated farms situated on or near the Gila River, and that while the witness Holland was on the stand questions were directed to him seeking to elicit facts with reference to that river and what portion of the water thereof was used upon the farms of deceased. The bill fails to disclose the relevancy of the answers sought and we are unable to discover the relation of this testimony to the case.

Finding no errors justifying reversal the judgment of the lower court is affirmed.

*Affirmed.*

ON REHEARING.

June 25, 1919.

MORROW, Judge.—Counsel for appellant have filed a motion for rehearing, exhibiting commendable zeal, great research and uncommon ability. It is insisted that the refusal of the court to be guided by the rule announced in Puryear v. State, 50 Texas Crim. Rep., 454, was error, which should be corrected. The rule contended for by the appellant is, that the grand jury having indicated Tom Coggin and Millard Coggin for the murder of Tom Lyons in the same indictment under which appellant was tried, and a severance having been had, and the order of trial fixed whereby the case of each of the Coggins was set in advance of that of appellant, that the State was powerless to try the appellant until after each of the Coggins had been either tried, or upon their dismissal they had been given immunity from further prosecution for the same offense. The views of the court at various periods of its history as reflected by the decisions are referred to in the original opinion.

In deciding the Puryear case, *supra,* that of Brown v. State, 42 Texas Crim. Rep., 176, was in direct conflict, and was expressly overruled. In Hobbs v. State, 53 Texas Crim. Rep., 74, the court said:

"Appellant claims that these proceedings were directly in the face of the holding in the case of Puryear v. State, 50 Texas Crim. Rep., 454. To this contention we accede, and if the rule adopted in the Puyear case should prevail we would not hesitate to reverse the case for the error here assigned. We do not believe, however, that the Puryear case should be fllowed. We think the reasoning in that case is fallacious and unsound, the conclusion reached unsafe, and the result wholly mischievous. It is directly in the teeth of the decision of this court in the case of Brown v. State, 42 Texas Crim. Rep., 176. It is, as we believe, at variance with the letter and spirit of our Code of Criminal Procedure. . . . We think that the Puryear case is not supported by the intent and true meaning of our statutes. It is against the early decisions of the court. It is illogical in its reason-

ing and it is evil, and only evil in its results. So believing, we overrule the Puryear case, and uphold and commend the action of the trial court in the matter complained of.''

In Manor v. State, 45 Texas Crim. Rep., 372, the reversal took place, as we understand the opinion, because, in the reasons given by the prosecuting attorney in his motion to dismiss the case against the co-indictee, it was made to appear that the case was not dismissed for any reason which the statute recognized as a legal one, and disclosed an intent upon the part of the prosecution to subvert the severance statute and wrongfully deprive the accused of the benefit of its provisions. That case and the Smith case, 55 Texas Crim. Rep., 327, enforce a sound principle, viz., that the prosecution cannot deprive one accused of crime of his legal rights by fraud and circumlocution, and that when an attempt is made to do so, and the facts are properly brought before this court for review, such proceeding will not receive its sanction. But in the absence of such a showing this court will not, and is not authorized to presume other than good faith in the action of the trial court and the prosecuting officers. The statute, Article 729, C. C. P., having direct reference to the question of severance, says: ''The attorney representing the State, may, at any time, under the rules provided in article 37, dismiss a prosecution as to one or more defendants jointly indicted with others; and the person so dismissed may be introduced as a witness by either party.'' This is a provision of the Code of long standing. Article 37 C. C. P., is as follows:

''The district or county attorney shall not dismiss a case unless he shall file a written statement with the papers in the case, setting out his reasons for such dismissal, which reasons shall be incorporated in the judgment of dismissal; and no case shall be dismissed without the permission of the presiding judge, who shall be satisfied that the reasons so stated are good and sufficient to authorize such dismissal.''

We have before us no authenticated statement impeaching the good faith of the trial judge and prosecuting attorneys, or showing that there was a departure from the procedure thus pointed out by the statute. The question presented is this: When a severance is ordered does the law require the State to grant immunity from further prosecution to the co-indictee whose trial is first in order on its dismissal before it can proceed with the trial of one whose case, in the order of severance, is subsequent? In the opinion of the writer, the negative answer of of this question is pertinently and correctly put by Judge Ramsey in the quotation from the case of Hobbs v. State, *supra*. We think the accused was accorded his full legal rights when the cases against the co-indictees were dismissed; there appearing nothing in the order of dismissal, nor in the bill of exceptions reversed to the action of the court, which impeaches

the fairness and good faith of the court and its officers in their action. The right of severance of joint indictees comes from Article 726 of the present statute; the old Code, Article 587; Paschal's Digest of Laws, Art. 3054. See Forcey v. State, 29 Texas Crim. App., 409; Boothe v. State, 4 Texas Crim. App., 207; Teiman v. State, 28 Texas Crim. App., 145. They had the right to agree upon the order of trial, and having done so, it was not within the power of the court or its officers to arbitrarily or fraudulently deprive them of the benefit which it was intended the statute should give them. But as we understand the proposition contended for by appellant, it asserts that a right accrued to the accused which was not given by the statute, but which, on the contrary, was in opposition to the terms of the statute, placing a limitation upon the right of the State not embraced in and not reasonably implied by Article 791, C. C. P., which we quote as follows:

"Persons charged as principals, accomplices or accessories, whether in the same indictment or different indictments, cannot be introduced as witnesses for one another, but they may claim a severance; and, if any one or more be acquitted, *or the prosecution against them be dismissed,* they may testify in behalf of the others."

Before the passage of this statute it was not the right of one accused of crime to demand that his co-indictee be given immunity so that he might be forced to testify, and so that his testimony would be relieved of the odium of suspicion attendant upon his indictment. Prior to the passage of the statute the co-indictee might testify in behalf of the accused on trial, and he might also refuse to testify as the co-indictees in the present instance did, and if he elected to give his testimony he was subject to cross-examination, which would have disclosed his indictment and his interest in the cause. In the passage of Article 791, *supra,* which was in the Code, Article 230, Paschal's Digest, 1826, the previously existing rule of evidence was modified in the respect that co-indictees were not available to the accused as witnesses in his behalf, unless they were acquitted, or the prosecution dismissed. Tilley v. State, 21 Texas, 201. So long as they were under charge of the offense they were disqualified. When the prosecution against them ceased, their disqualification was removed. The disqualifying fact was the indictment. Its dismissal removed the disqualification. The view that the dismissal must be accompanied by immunity is one that we cannot accept. To our minds it is neither within the letter nor the spirit of the law. It was intended by the law-makers in writing the severance statute that the State could not close the mouth of one who knew facts favorable to the accused by including the witness in the indictment. This purpose is effected when the law forces the State to either try the indicted witness or dismiss his case before his co-indictee is put on trial. It accomplishes this; it intended no more.

There was evidence that the appellant, acting under an assumed name, and false pretext enticed the deceased from his home at Silver City, New Mexico, to El Paso, met him at the train, invited him into the automobile for the purpose of going from the depot to the City, that the automobile was driven by an unidentified man, that this occurred at night, that the body of the deceased was found the following morning in a ravine some distance from El Paso, that there were automobile tracks near the ravine, that the traveling bag of the deceased was found near him, that his pockets were rifled, that nearby was an iron bar upon which there was blood and gray human hair, that near the body was a box containing sand and upon the box and sand there was blood and gray human hair, that the appellant two days after the homicide stated to one Clark that while the deceased was in the automobile the appellant had made a pretext to stop it and had dealt the deceased a number of blows upon the head with an iron bar, that he had put his head in the box to prevent the blood from getting upon the floor of the car, that he had been promised two thousand dollars by Tom Coggin for killing deceased and had been paid by Tom Coggin five hundred dollars of the amount. The conversation with Clark, according to Clark's testimony, took place at Colorado, Texas. The appellant was arrested at Beaumont, had in his possession a mileage book purchased at Colorado, a memorandum showing that Tom Coggin's ranch was a certain distance from Glen Rosa, New Mexico, also a memorandum showing the number of Tom Coggin's house in El Paso. There was evidence that Millard Coggin resided in New Mexico, apparently at the point mentioned in the memorandum, near Tom Coggin's ranch. Appellant also had, when arrested, a memorandum partially erased, giving the telephone number of a garage situated in El Paso which evidence showed was the Auditorium Garage belonging to the witness White. Several days after the homicide the sheriff and others located a Buick automobile at the Auditorium Garage. There was evidence that the top of this car when found was down; that inside of the top there were blood stains with gray hair matted in them. The gray hair, according to the evidence, corresponded in color with that of the deceased and with that found upon the box which was found near the dody of the deceased. The car also had blood stains on the floor, on the door, the cushions and the back of the seat. There was a new rug in the back of the car when found and it appeared that the old rug had been cut so that pieces of it remained under the footrail. There was found in the car a new hammer with what appeared to be blood stains upon it. An analysis was made of the blood stains on the car, on the box and on the iron bar and were found, according to the testimony, to be human blood. The hair on the car and the other objects mentioned was also examined by an expert with instruments and, according to his testi-

mony, that found upon each of them concided with that on the others. Hunter, a witness for the State, testified that while at a point in New Mexico near Alamogordo where Tom Coggin was shipping cattle, he, on the day following the homicide, saw a strange man whom he later indentified as appellant; that the appellant and Tom Coggin were in the caboose of the train together, that appellant was not connected with the cattle shipment. The witness testified also that on the day following the homicide he saw Millard Coggin at the point mentioned in New Mexico driving and that he came in an automobile. Another witness testified that between the point mentioned in New Mexico and El Paso on the day following the homicide, he saw Millard Coggin driving an automobile in which there was another man whom the witness did not know. Appellant's presence with Millard Coggin at the time was controverted by circumstances. Proof was made by the witness White that on the evening of the day on which the homicide took place he had rented the car which was found by the sheriff, to Millard Coggin and it had by Coggin been driven out of the garage, and that at the time it was taken the blood stains and hair were not upon it and the old rug had not been taken out nor a new one put in, and that two days after the homicide Millard Coggin returned the car, paid for its use and that upon its return it was in the condition described by the sheriff and others who examined the blood stains and hair upon it. The case was tried upon the view that the State's testimony consisted alone  of circumstantial evidence and the appellant was given the benefit of the charge on the law of circumstantial evidence. Under the rules applicable to such evidence circumstances are admissible which tend to prove the issue. Incidents are legitimate which would be irrelevant depending upon direct testimony. Circumstances may be established when they tend to make the proposition or issue more or less probable. McGuire v. State, 10 Texas Crim. App., 125; Grimmett v. State, 22 Texas Crim. App., 36; Preston v. State, 8 Texas Crim. App., 30; Parish v. State, 209 S. W. Rep., 679.

Under these rules, the evidence which was introduced showing that Millard Coggin hired a car, the condition it was in at the time it was hired and when it was returned, were, we think, admissible independent of whether a conspiracy to commit the murder in which Millard Coggin was a party, was proved or not. The evidence that the deceased was killed in a car in such manner that his hair and blood would probably have been upon it, in connection with the evidence showing that the hair and blood found upon the car at the garage two days after the homicide and that found upon the objects with the body of deceased, and which the evidence tended to show was used in his destruction, were similar, were sufficient to take to the jury the question as to the identify of the car which was found with that into which the appellant  invited the deceased on

the night of the homicide. With such evidence of its identity, we think it infringed no rule of circumstantial evidence to permit the State to trace the car by evidence from the time that it was found with the blood stains upon it back to the time when it left his garage before the homicide in a different condition. We are of the opinion, however, that the facts which we have detailed were sufficient to raise an issue of fact as to whether there was a conspiracy to kill the deceased to which appellant and both Millard and Tom Coggin were parties, and that under the rule stated in the original opinion touching the acts of co-conspirators found in the possession of the instrument used in committing the crime, the evidence introduced tending to show    Millard Coggin's connection with the car was admissible.

We would but indulge in repetition to review the criticism of the action of the court touching the special venire. The original opinion correctly reflects the record and expresses the view to which we adhere on the legal questions presented therein. Believing that there is nothing disclosed in the record which entitles appellant to a new trial or authorizes a reversal of the judgment rendered and approved by the trial court, the motion for rehearing is overruled.

*Overruled.*