### JAMES ANDERSON v. THE STATE.

#### No. 5280. Decided June 11, 1919.

**1.—Murder—Defense of Property—Charge of Court.**

Where, upon trial of murder, the evidence did not raise the issue of the defense of personal property or any other property, it was reversible error in the court's charge on self-defense to limit such charge to the defense of personal property.

**2.—Same—Self-Defense—Charge of Court—Means of Defense.**

Where, upon trial of murder, the evidence did not raise the issue, it was reversible error in the court's charge on self-defense that the defendant

from his standpoint must resort to other means for the prevention of injury except retreat, under Article 1107 P. C., as the facts raised no such issue.

#### 3.—Same—Manslaughter—Charge of Court—Self-Defense—Adequate Cause.

Where, upon trial of murder, the court in his charge on manslaughter confused it with a charge on self-defense, and authorized the jury to convict of manslaughter upon a clear-cut proposition of self-defense, instead of announcing as adequate cause an attack causing pain or bloodshed, thus practically authorizing the jury to convict of manslaughter upon the law of self-defense, this was reversible error.

#### 4.—Same—Manslaughter—Charge of Court—Previous Difficulty—Provocation.

Upon trial of murder, inflicting the death penalty, where the evidence showed that the homicide grew out of a prior difficulty between the parties the evening before, and was but a renewal of the previous trouble, the court's charge on manslaughter limiting the provocation to the time of the killing was too restrictive.

#### 5.—Same—Evidence—Adequate Cause—Prior Provocation.

Upon trial of murder, defendant's wife, who testified for him, should have been permitted to testify that on the previous evening to the homicide, after a prior altercation with the deceased the defendant came home and told her what occurred; that he had been ordered from the place and that the defendant was agitated and excited.

#### 6.—Same—Evidence—Declaration by Defendant—Intent.

Where, upon trial of murder, it appeared from the evidence that the homicide grew out of a former difficulty between the parties on the previous evening, in which the deceased had beat up the defendant and had ordered him from his place as a tenant, the defendant should have been permitted to testify that on the morning thereafter on the day of the homicide he talked with his white friends about his trouble with deceased to get their advice as to what he should do, and who told him to remain on the place; to rebut the theory of the State that the killing was deliberate. Following Koller v. State, 36 Texas Crim. Rep., 496, and other cases.

#### 7.—Same—Evidence—Declarations of Third Party.

Where, upon trial of murder, the State placed on the witness stand the wife of the deceased, who testified that she had not seen the difficulty but heard her husband say, "put it down," it was error to permit her to further testify that she was then in bed from childbirth and that the child was only three or four days old at the time. This was reversible error under the facts in the instant case.

#### 8.—Same—Argument of Counsel—Practice on Appeal—Affidavits—Motion for New Trial.

Where the motion for new trial showed that the State's Attorney in his argument said that negro rioters in Houston called a white woman and her baby to the door and then cruelly shot them down and that the defendant was a murderer and rapist, all of which was not in evidence and objected to at the time, and there was no contest in the motion for new trial about this matter, affidavits signed by the district judge and State's counsel filed in this court independent of the record cannot be considered, and such argument is reversible error.

Appeal from the District Court of Dallas.   Tried below before the Hon. R. B. Seay.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*D. E. Coffman* and *Andrew J. Priest* for appellant.—On question or rejection of evidence; Graham v. State, 72 Texas Crim. Rep., 9.

On question of excluding testimony of defendant's wife; Lancaster v. State, 31 S. W. Rep., 515; Sweeney v. State, 65 Texas Crim. Rep., 593, 146 S. W. Rep., 883.

On question of excluding testimony of defendant in advising with his friend as to previous difficulty; Ward v. State, 70 Texas Crim. Rep., 393, and cases *supra;* also Jackson v. State, 55 Texas Crim. Rep., 79; Johnson v. State, 29 Texas Crim. App., 150.

On question of argument of counsel; Batseon v. State, 46 Texas Crim. Rep., 34; McLaughlin v. State, 48 id., Texas Crim. Rep., 215; Bishop v. State, 72 Texas Crim. Rep., 1, 160 S. W. Rep., 705.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant, a negro, was convicted for killing Clarence Potter, a white man, and given the death penalty.

Briefly, the evidence discloses that appellant was a renter on the farm of deceased, occupying a tenant house on the premises, and also was employed by the deceased to assist in work about the place. Among other things, it was his duty to assist in feeding the work stock. The killing occurred on the 19th of June. On the evening of the 18th appellant fed the stock. Deceased came and asked him if he had fed the stock. Appellant replied in the affirmative and as directed by deceased. This statement was challenged as to placing a sufficient amount of hay in the lot for the stock not fed in the barn. The deceased questioned the accuracy of appellant's statement, whereupon appellant replied that he had followed his instructions. Appellant then went in the barn to secure more hay, and deceased followed him. What occurred immediately in the barn is shown by the testimony of defendant, there being no one inside the barn except himself and deceased. There was another witness who testified to the preceding facts, and also with reference to what occurred when appellant and deceased emerged from the barn. Appellant's statement is that while in the barn deceased took from where it was hanging a hay hook. This was a heavy iron hook. Deceased began beating him with it. Appellant warded off his blows as best he could and ran. The third blow struck him in the back and he said the scar from that wound was on his back at the time he was testifying; that he went immediately home. The other witness did not know what occurred in the barn. As they emerged appellant was in front followed by deceased; that appellant picked

up a piece of plank lying near by and deceased made him put it down, and witness left at that juncture and heard nothing more. During the trouble and about its termination the deceased told appellant that he must leave his place. The language and intonation of voice was an issuable fact, whether or not it was in an angry or threatening tone. Appellant immediately went home, spent the night, and the next morning went to Grand Prairie, about two miles away to see his white friends, among them the constable. He returned from there about 11 or 11:30, ate his mid-day meal, got his hoe and went to his crop and began hoeing cotton and cutting weeds. This was about one o'clock. About two o'clock deceased went to his part of the field several hundred yards away and began plowing. Shortly after reaching this point he left his team and plow and went to where appellant was working. A conversation occurred between them, the words of which were not heard by a State's witness who was a hundred yards or more away. Appellant testified that when deceased approached him it was in an angry and threatening way, and was practically a renewal of the trouble of the evening before with reference to his leaving the place. That he made threatening demonstrations as he approached. Appellant told him not to come closer. He continued to approach in this attitude, when appellant picked up his gun, which was near by, and fired two shots, which resulted fatally.

Upon this state of case the court charged the jury with reference to murder, manslaughter, self-defense and in defense of personal property. There were several exceptions reserved to the charge, some of which were refused by the court as shown by his endorsement on the bills. These were so qualified as to leave it in some doubt as to whether they are sufficiently presented for consideration. There were exceptions to the charge before being read to the jury, which are approved without qualification. It may be questionable that standing alone these exceptions are sufficient, but in addition to reserving these exceptions, appellant submitted a number of special charges which were refused by the court. His refusal was based on the statement that he had already charged the law correctly. Inasmuch as the judgment will have to be reversed on other matters, the sufficiency of the bills of exception with reference to charges will not be discussed, but the general proposition involved in them will be noticed inasmuch as the case must be again tried.

The charge on the defense of property, as we understand this record, should not have been given. This is specially true with reference to defense of personal property to which the court limited its charge in the instructions to the jury. As we understand this record there is no fact that shows defendant was defending against an attack on his property, either personal or otherwise, and clearly not as to personal property. The deceased had ordered him to leave the place. Appellant relied upon self-defense from apparent danger,

and not from actual danger. There are statments in the court's charge limiting some phases of the defensive matters to actual danger. This was also carried into the charge on manslaughter. The court also charged on self-defense from the standpoint or resort to other means under article 1107 of the Revised P. C., which requires that in any other unlawful and violent attack besides those mentioned in the preceding article, which is justifiable homicide, all other means must be resorted to for the prevention of the injury except retreat. The State's case was a killing from malice on account of the difficulty the day before, urged because appellant carried his gun to his field where he was at work. Appellant's theory was that deceased came to where he was at work in a threatening attitude, and he thought his life was in danger, and he defended from that standpoint. Where such is the case the attacks mentioned in article 1107, *supra,* are not to be charged. The decisions are very clear and numerous. There is a long line of decisions which lay down this proposition: If the attack, if made at all, was made with a deadly weapon, and from defendant's standpoint at the time produced a reasonable expectation or fear of death or of serious bodily injury, it is error to charge the jury on the theory that defendant must have resorted to other means than retreat to avoid the necessity of killing his assailant. These cases are found collated in Branch's Ann. P. C., Sec. 1919. The cases are too numerous to be here collated and well understood. This further proposition is also stated by Mr. Branch in the same section: If defendant acts under a reasonable expectation or fear of death or of serious bodily injury, produced by the acts of his adversary at the time of the homicide, he is not bound to retreat, nor resort to other means of averting danger; he may slay his adversary if the danger be imminent and pressing, or if it reasonably appeared so to be to defendant, viewed from his standpoint at the time. The authorities under this proposition are also listed by Mr. Branch.

The charge on manslaughter contains, among other things, this: "The following are deemed adequate causes: An assault or attack by the deceased upon the defendant threatening death or serious bodily harm." The court signs the exception with the qualification that this and some of the other objections to the charge on manslaughter were only excepted to in a general way. The exception approved by the judge is as follows: "Now comes defendant and excepts to the charge on manslaughter because it includes subdivision 1 of article 1129, and the last sentence of section 2 of article 1129 of the Texas Penal Code, because said portions are not the law applicable to the case, are misleading to the jury, and prejudicial to the defendant." Another exception to the charge on manslaughter is as follows: "Now comes the defendant and excepts to the court's charge on manslaughter because the same does not properly set forth the law applicable to the case, and the court's

action in refusing to give the defendant's special charges Nos. 1, 2, 3 and 4.'' Without discussing whether these instructions and the refused requested instructions cover what the defendant believed to be the defects and errors in the court's charge, they were sufficient to call the court's attention to these matters. They are noticed so that upon another trial the court's charge should be so given as to avoid such errors. The quotation from that charge authorizes the jury to convict of manslaughter upon a clear cut proposition of self-defense. The statute announces as adequate cause an attack causing pain or blood-shed. As given the court authorizes the jury to convict of manslaughter upon the law of self-defense. The statute makes this the law of self-defense and in his charge on self-defense the same proposition is given as basis for acquittal. There are other matters suggested for reversal on the charge of manslaughter which we think should not occur upon trial. That portion of the charge which limits the provocation to the time of killing and not to some other provocation as given by the charge is misleading. It was impossible under the circumstances of this case to disconnect the difficulty the evening before from that which occurred at the time of the homicide. It was but a renewal with an interregnum but plainly referable to the previous trouble. Had the killing occurred the evening before, there would be no question of manslaughter being in the case. There is no question but that deceased did approach him at the time of the killing, and reminded him that he had ordered him to leave his premises, and in such manner as to demand he should leave. While defendant might not be permitted to use the provocation the evening before to reduce the homicide to manslaughter, yet the two should be considered together, and in the light of each other. The court did in a general way instruct the jury that they might consider all the facts and circumstances in the case. If upon another trial the court should see proper to charge with reference to the previous provocation, it must be so done as not to instruct the jury not to consider it in any light as a provocation. Standing by itself it might not be a provocation, yet in the light of all the circumstances it was but a renewal of the difficulty that occurred the evening before. There should be a direct and pertinent application of the law to the facts. The charge in regard to defense of property, especially personal property, should be avoided, and that the accused should be required to resort to all other means.

A bill of exceptions recites that while appellant's wife was upon the witness stand the defendant sought to prove by her that he came home from the barn on the evening of the 18th excited and agitated. She asked him what was the matter; was told what had occurred between himself and deceased, and his fear of trouble; that he had been ordered from the place, and he did not know what to do. The court ruled this out on the theory that it was self-serving, and also states in the bill that defendant did not offer to prove that his

mind was agitated and excited, and did not offer to prove specifically at what time the conversation occurred after he reached his residence. Keller v. State, 36 Texas Crim. Rep., 496; Lewallen v. State, 33 Texas Crim. Rep., 412. The defendant's counsel sought to dictate and state his reasons, and what the witness would testify in this respect, among other things that he was agitated and excited. The bill shows at this juncture the district attorney objected and asked the court if he was inaugurating the practice of stopping the trial in order for the dictation of a bill of exceptions, and the court said no. These statements to the wife were within the rule of *res gestae*. If he was excited and agitated at the time and had just come from where he had been beaten by deceased, and ordered to leave his premises, his statements would be admissible in view of this record. We think for this reason the judgment should be reversed. The accused should be permitted to incorporate his excluded testimony.

There is another bill of exceptions which recites that defendant offered to testify that on the morning of the 19th he went to the town of Grand Prairie to talk with his white friends about his trouble with deceased and get their advice as to what he should do. The bill states very fully what he expected to testify. We are of opinion defendant should have been permitted to testify to these matters. There is no question in this record that the difficulty between deceased and defendant grew out of the matters already mentioned at the barn on the evening of the 18th. Appellant was permitted to testify he did go to Grand Prairie, to see his white friends in regard to what he should do about leaving his crop. All else was excluded on the theory it was self-serving. State's case is predicated upon the idea that the killing was deliberate, and that taking his gun with him to the field was in pursuance of such formed design. The State did bring out the fact of his absence from the field, and his coming back and going to work, and that he carried his gun to his place of work. Appellant had a right to explain his absence. He had a right to explain or do away with any adverse fact by reason of the State's view of it if he could, and this by the express terms of the statute. These facts were used by the State as incriminating. He would have stated his purpose was to confer with the white men, he being a negro, and a renter, and deceased the landlord, a white man, in view of the threatening attitude of deceased, and the beating, and being ordered to leave the place, to meet the force and effect of the State's contention. He would have testified and would have shown by these white men that they told him he had a right to remain with his crop. The State relied upon its side of the case to show malice, deliberation, preparation, etc. Appellant had a right to meet this and show that his purpose was not as contended by the State. The State may prove motive or malice, deliberation or purpose, but when the State does this the defendant has a right to meet this and show that his purpose was not such as

was contended by the State. Koller v. State, 36 Texas Crim. Rep., 496; Lewallen v. State, 33 Texas Crim. Rep., 412; Berry v. State, 30 Texas Crim. App., 423; Branch's Crim. Law, sec. 337. He might not be permitted to go into details of these conversations, but that they advised him he had the right to remain with his crop we think was permissible.

There is another question. The wife of deceased was placed upon the witness stand and testified that she heard her husband say "put it down, put it down." She did not, as shown by the bill, see any of the difficulty and could not because of obstruction. The State was then, over objection, permitted to prove by this witness that she was in bed from child-birth and that the child was three or four days old at the time, and it was also shown she had this baby in her arms while testifying on the witness stand before the jury. Serious objection was urged to this testimony, which should have been sustained. The State could prove by the wife that she heard her husband make the remarks, but it was not proper to prove by her the fact she was confined in bed with child-birth, the baby only being three or four days of age. She was a white woman and deceased a white man. The natural sympathy and feeling engendered by the jury for a woman under such circumstances must have had a decided influence. The injury is emphasized in the verdict, which was death.

There is another bill of exceptions reserved to remarks of the district attorney. Some of these are reserved in a bill of exceptions, and some in motion for a new trial. The motion for a new trial was sworn to by defendant and by his counsel as being true. There was no contest in reference to it, and no facts introduced in the motion for new trial. There is an affidavit signed by the district judge and one by State's counsel forwarded here since the record was filed, which are independent of the record and cannot be considered. These remarks were brought to the attention of the court as stated. There being no evidence and no controversy about it, they will be taken under the authorities as having occurred. See Stanley v. State, 16 Texas Crim. App., 400; McLaughlin v. State, 48 Texas Crim. Rep., 215; Bateson v. State, 46 Texas Crim. Rep., 34; Anderson v. State, 50 Texas Crim. Rep., 137; French v. State, 55 Texas Crim. Rep., 541. There are a number of other cases that might be cited, but these are sufficient.

Among other things, it is shown in motion for new trial that the following language was used by one of the prosecuting officers: "Negro rioters in Houston called a white woman and her baby to the door and then cruelly shot them down." State's counsel also denounced the defendant as a "murderer and a rapist," and in substance said: "When once his (defendant's) desire for white blood arises, nothing can satiate his bloodthirstiness." Again, "Why didn't he go and get an injunction if he were acting in defense of property." And again he said: "Inasmuch as the good citizens of Grand Prairie

had restrained and withheld themselves until the trial of this case, it is your duty to bring in the death penalty.'' These are samples of the argument to which reference is above made. The judge undertakes to qualify the language to some extent.. There was no contest as to the language used with reference to the riot in Houston; there was no evidence that defendant was a murderer and a rapist, unless as to murder growing out of the facts of this case, or that he had ever otherwise acquired a thirst for the blood of white men. Language of this character should not be indulged. While the court in his qualification to the bill of exceptions undertook to minimize the force and effect of some of these remarks, the others seem to stand unchallenged, and especially those set out in the motion for new trial and not embodied in a bill of exceptions. Other matters are set up which occurred during the trial in the courtroom tending to impair fairness of trial.

This defendant was defended by two young lawyers appointed by the court. They showed commendable zeal and energy in the defense of their unfortunate client. The fact that counsel were appointed by the court is to be considered we think legitimately in support of the proposition that defendant was a friendless negro without means and influence.

The judgment ought not to stand as affirmed in view of this record. It is, therefore, reversed and remanded.

*Reversed and remanded.*