## James Anderson v. The State.

### No. 5756.  Decided April 21, 1920.

**1.—Murder—Charge of Court—Manslaughter.**

Where, upon trial of murder, inflicting the death penalty, the court instructed the jury on the law of murder, manslaughter and self-defense, but the record on appeal showed that there was evidence that the defendant fired two shots in self-defense, although the State's testimony showed that the deceased fell immediately after the first shot and that defendant fired the second shot after deceased fell, the court should have charged on manslaughter and have informed the jury of the grade of defendant's offense in the event they should believe that the first shot was fired in self-defense, although the second shot was fired after the danger real or apparent, to defendant had ceased, as there was evidence from which the jury might have concluded that the homicide occurred in a sudden passion aroused by adequate cause.  Following Ross v. State, 53 Texas Crim. Rep., 279, and other cases.

**2.—Same—Cooling Time—Charge of Court—Manslaughter.**

Where, upon trial of murder inflicting the death penalty, the evidence showed that two shots were fired by defendant at the deceased, and defendant's testimony showed that after he had fired the first shot in self-defense, the deceased kept advancing and he fired the second shot after reloading, and that deceased fell at the second shot, as the testimony of the State showed that the first shot felled the deceased and the second shot was fired after he was down, etc., the court should have instructed on the law of cooling time as between the firing of the first and second shots and given a proper charge on manslaughter, under this phase of the case.  Following Lagrone v. State, 84 Texas Crim. Rep., 609, 209 S. W. Rep.

**3.—Same—Argument of Counsel—Practice on Appeal.**

While the objections to the argument of counsel are not preserved so as to justify a reversal, State's counsel are cautioned not to make unnecessary references to the members of the family of the deceased in the instant case.

Appeal from the Criminal District Court of Dallas No. 2.   Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of murder; penalty: death.

The opinion states the case.

*Andrew J. Priest, Jimmie McNicoll* and *D. E. Coffmen,* for the appellant.—On question of court's charge on manslaughter: Best v. State, 135 S. W. Rep., 581; Foster v. State, 148 S. W. Rep., 583.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of court's charge: Davis v. State, 141 S. W. Rep., 93.

MORROW, Judge.—The appellant, a negro man, shot and killed Clarence Potter, a white man.  He is under conviction for murder with the death penalty assessed.

The facts are not dissimilar from those developed upon the former appeal, 85 Texas Crim. Rep., 422, 214 S. W. Rep., 353. In the evidence of matters preceding the homicide, there is but little conflict. The deceased owned a farm, ten acres of which, with a house, was rented to appellant, who worked the land, also doing some work for the deceased. On the evening preceding the homicide, the deceased complained of the manner in which the appellant was feeding the stock. A controversy arose, at the termination of which the deceased told the appellant to leave the premises, and also informed him that he must surrender the house and rented premises. This controversy took place at the barn, and both the deceased and appellant went in the barn; and, according to the state's testimony, when the appellant came out he picked up a scantling, and was told by deceased to leave the premises, that trouble was not wanted. Appellant claims that while he was in the barn the deceased assaulted him with a metal hook, and inflicted some wounds on his back. These wounds were exhibited by him to his wife the same evening, and after the homicide to other witnesses. The appellant the next morning went to a neighboring town, and related the incidents of the trouble to some white men, one of whom was the city marshall, who advised the appellant that he would not have to leave the premises until the end of the year, and that the best thing to do was to go back and work the crop. Returning to his home, the appellant took his shotgun with him and went to the premises, laid the gun down, and began working with a hoe. The deceased, who was working on his own premises, observing the appellant, came to where he was working, and it was there that the homicide took place. The eyewitnesses for the state were so far away that they were not able to understand what was said by the deceased prior to the shooting, though they heard his voice. The appellant claims that when the deceased reached a point about twenty steps distant, he said: "Damn your black soul, I thought I told you to get off my place," and seemed quite angry. The appellant testified that recalling the injuries he had received on the previous evening, and observing the deceased's hand behind him, indicating that he might be armed, and believing that he was armed, the appellant became frightened, and picked up his gun, when the deceased said: "Put down that gun, you black son-of-a-bitch, I'll kill you;" and, as appellant expressed it, "made like he was going to shoot. The first shot was then fired while the deceased was advancing, but failed to stop the deceased, and appellant re-loaded and fired the second shot when there was but about four steps separating them. Appellant said he fired the second shot from his hip, not having time to raise it after firing the first shot and re-loading. The deceased fell at the second shot. There were scattered shot about the head and neck of the deceased, which, in the opinion of the doctor, were not fatal. On the breast, about two inches above the heart, was a fatal wound, indicating that the load from the shotgun had entered.

though it did not come through the body. The clothes on the breast of deceased were powder burned.

The state witnesses who saw the difficulty from a distance said in substance that, attracted by the talking, they looked and saw the deceased standing, and the appellant with his gun pointed at him, they being about forty or fifty feet apart; that they heard the deceased talking, but heard nothing said by the appellant, and saw deceased make no demonstration. The deceased fell immediately after the first shot, according to these witnesses, and appellant re-loaded, walked to a point near the deceased, who was lying on the ground, and fired the second shot.

The court instructed the jury on the law of murder, manslaughter, and self-defense. By appropriate exception, duly presented, the appellant complained of the charge on manslaughter in that it failed to inform the jury of the grade of appellant's offense in the event it should be believed that the first shot was fired in self-defense, but that the second shot was fired after the danger, real or apparent, to the appellant had ceased. We think the facts called for such an instruction. Admittedly there was evidence from which the jury might have concluded that the homicide took place in a sudden passion aroused by an adequate cause. Responding to this evidence, the learned trial judge gave a charge on the law of manslaughter. The law of self-defense was also charged, and the jury therein told in substance that if the appellant shot and killed the deceased under a reasonable apprehension or fear of death, or serious bodily harm, that an acquittal should result. The jury may have believed that the shot which killed the deceased was fired when there was no reasonable apprehension that he would kill or injure the appellant. Such was the state's theory. From all the evidence it is manifest that the first shot did not kill, and probably would not have killed the deceased, but from the state's standpoint it did disable, and the jury may have believed that it rendered it unnecessary that the second shot should be fired. The state of mind, therefore, in which the second shot was fired was of vital importance in the determination of the grade of the offense. The shot might have been fired with deliberation, and the offense might have been murder. It might have been fired when the appellant was in a state of agitation sufficient to reduce the offense to manslaughter. The condition of his mind at the time he fired the second shot was a question of fact. Ross v. State, 53 Texas Crim. Rep., 279; Jones v. State, 33 Texas Crim Rep., 492; Watson v. State, 50 Texas Crim. Rep., 171. The law defining the duty of the trial court under the evidence is stated in the opinion of Judge Willson in the case of Hobbs v. State, 16 Texas Crim App., 523, with such clearness that we are constrained to quote his language: "Again, the learned judge instructed the jury that the defendant's right of self-defense ceased when the danger, real or apparent, had ceased. This was correct. But suppose, in defending himself against a violent

attack, or a supposed violent attack, he became excited by passion to such an extent as to render his mind incapable of cool reflection, and under this state of excitement he carried his right of self-defense too far, used more forces than was necessary to his protection, fired one or more shots after all real or apparent danger had ceased, but before his mind had had time to cool, and from wounds thus inflicted death had resulted, would this have been murder? We think not. Suppose the first shot fired by the defendant was justifiable, but that the two shots fired by him which struck Whitely were fired after the danger, real or apparent, which threatened the defendant had ceased, but that he fired the said shots under the immediate influence of sudden passion arising from the supposed deadly conflict in which an instant before he had been engaged, and fired them before he had had reasonable 'cooling time,' reasonable time to realize that he was no longer in any danger, would not this state of facts, if the shots had killed Whitely, constitute manslaughter and not murder? We think a homicide under these circumstances would not be of a higher grade than manslaughter.''

The jury having inflicted the extreme penalty for murder upon a state of facts upon which with a proper instruction they might have found the appellant guilty of manslaughter, we believe the failure to instruct on the law of cooling time as between the firing of the first and second shots was an error of such consequence as to entitle the appellant to another trial. Lagrone v. State, 84 Texas Crim. Rep., 609.

The court instructed the jury on the law of cooling time as between the time of the homicide and the difficulty on the preceding day, and of this we think there can be made no just complaint by the appellant. The other criticisms of the charge we think are not meritorious.

The complaint of the argument made is not so preserved as to justify a reversal. Because of the peculiar character of the case, it required caution in the use of language in argument which would not inflame the minds of the jury, and upon another trial unnecessary references to the members of the family of the deceased will doubtless not occur.

Because of the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*