## JAS. C. MARTIN V. THE STATE.

### No. 6416.   Decided November 30, 1921.

### Rehearing denied February 1, 1922.

#### 1.—Murder—Evidence—Motive—Jealousy—Rule Stated.

Where, upon trial of murder, no evidence of motive was introduced by the State in its opening testimony, and the defendant claimed both insulting conduct to a female relative and self-defense, and it developed in the course of cross-examination of defendant and his witnesses that both the defendant and the deceased had been paying attention to a certain young lady, and defendant denied that he knew that deceased was doing so, and there were circumstances in evidence to support the State's contention that he did know, there was no error in admitting in evidence testimony to the effect that the deceased had been showing the young lady attention, as jealousy is uniformly regarded as admissible upon the issue of motive. Following Moore v. State, 52 Texas Crim. Rep., 336, and other cases, and this may be shown by circumstantial evidence. Following Kunde v. State, 22 Texas Crim. App. 95.

#### 2.—Same—Evidence—Motive—Defensive Theories.

It was not alone to the evidence concerning the attentions of the defendant and the deceased to the young lady that the jury might have looked in rejecting the defensive theories of the defendant, but they could also consider the conduct of the sister of defendant who was the female alleged to have been insulted, and that the same was inconsistent with her declaration that deceased had raped her.

#### 3.—Same—Requested Charge—Seeking Explanation—Self-Defense.

Where there was no abridgement or qualification of defendant's right of perfect self-defense, there was no error in refusing a requested charge that defendant had a right to seek the deceased for an explanation and to arm himself for the occasion. Following Smith v. State, 81 Texas Crim. Rep., 377, and other cases.

#### 4.—Same—Threats—Charge of Court.

Where the charge on threats was not subject to any just criticism upon the view that it made defendant's right to act depend upon the belief by the jury that the threats had in fact been made, there was no reversible error.

#### 5.—Same—Requested Charge—Different Shots Fired—Self-Defense.

Where the requested charge proceeded upon the theory that though the defendant made an unprovoked attack upon the deceased justified neither on the theory of self-defense nor manslaughter, and that in this state of mind the first and second shots were fired and death resulted from the third shot, the offense might be mitigated and reduced to the grade of manslaughter if, between the beginning and the end of the difficulty, his mind was rendered by sudden passion incapable of cool reflection, there was no error in refusing the same.

#### 6.—Same—Requested Charge—Cooling Time, Definition of.

While the doctrine of cooling time is, that while at the beginning the accused was justifiable, yet that when he killed the danger was passed, but that his passion might have been such as to mitigate the offense, yet, where

the requested charge was opposed to that of cooling time, and was predicated upon the idea that though when the defendant began the attack he acted on implied malice, his passion aroused during its progress might reduce the grade of the offense, there was no reversible error in refusing it. Distinguishing Lagrone v. State, 84 Texas Crim. Rep., 609, and Anderson v. State, 87 Texas Crim. Rep., 242.

### 7.—Same—Cooling Time—Charge of Court—Practice in Trial Court.

In view of the issues made, the testimony adduced and the instructions given, the issue of cooling time, if it was in the case, was not of such importance to require the court to instruct upon it, in the absence of a specific exception or a definite request.

### 8.—Same—Rehearing—Statement of Facts in Opinion.

Where the mistake of using certain language in the original opinion evidently occurred in misunderstanding dictation, the correction is made in order that the opinion may speak the facts, although it has no bearing upon the decision of the case.

### 9.—Same—Motive—Knowledge of Defendant—Circumstantial Evidence.

Where it was insisted upon motion for rehearing that this court committed error in holding that the State could properly introduce evidence showing that deceased and appellant had been paying attention to the same young lady, as bearing upon a probable motive for the homicide, because it was not shown by the testimony that appellant was apprised of deceased's attention, but the record showed that the situation of the parties, the relation existing between them; their living in the same neighborhood; could all be considered by the jury upon the issue of appellant's knowledge, there was no reversible error.

Appeal from the District Court of Collin. Tried below before the Honorable F. E. Wilcox.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Smith & Abernathy,* for appellant.—On question of motive: De Leon v. State, 155 S. W. Rep., 248; Clayton v. State, 201 S. W. Rep., 172; Waters v. State, 192 id., 778.

On question of different shots fired: King v. State, 134 S. W. Rep., 687, and cases cited in opinion.

*A. M. Wolford,* County Attorney; *H. Grady Chandler,* Assistant County Attorney, and *Truett & Neathery,* for the State.—On question of motive: Clayton v. State, 201 S. W., Rep., 172, and cases cited in opinion.

MORROW, PRESIDING JUDGE.—The conviction is for the murder of James Wiley Stockwell; punishment fixed at confinement in the penitentiary for a period of twenty years.

While on the street of McKinney, the county seat, in the evening after dark, the deceased was shot and killed by the appellant. Three shots were fired. Only one took effect. The bullet entered the breast

and penetrated the body, the point of exit being five or six inches below that of entry. The shirt front of the deceased was powder burnt.

From the evidence of the State, it appeared that on meeting the deceased, appellant immediately drew his pistol and fired; that the deceased turned and ran a short distance and fell; that appellant pursued him; that the deceased stumbled and fell upon the sidewalk; that after or about the time he fell, appellant fired two additional shots; that when the deceased fell he lay on his side.

No evidence of motive was introduced by the State in its opening testimony. The appellant introduced testimony to the effect that his sister, Mrs. Ritter, had been raped by the deceased upon the forenoon of the day on which the homicide took place; that after the assault the deceased threatened her life and that of her husband and of the appellant if she divulged his conduct; that later in the afternoon these facts were communicated by her to the appellant and her husband, Fred Ritter; that appellant, Ritter and Ritter's brother-in-law, Bevil, came from their homes in the country to the county seat for the purpose of reporting the assault to the officers; that the meeting with the deceased took place without design; that appellant accosted him, when the deceased made a demonstration which the appellant interpreted as manifesting an intention to draw a weapon; that to protect his person appellant drew his pistol and fired, the distance between them at that time being about three or four feet.

According to appellant, after the first shot was fired, the deceased continued his apparent effort to draw a weapon, meanwhile backing away; that he came in contact with a lady, when deceased ran behind her, and appellant again fired; that the deceased, without withdrawing his hand from the position, dodged behind an automobile, impressing the appellant that in so doing he was making an effort to shield himself while he shot the appellant. Following closely around the car, appellant pursued him; that deceased was retreating in the direction of a telephone post and appellant, still regarding his life in danger, again fired just as the deceased was falling on the sidewalk; that no other shots were fired.

By cross-examination and the introduction of original evidence, the appellant sought to support and the State sought to discredit both of the defensive theories advanced by the appellant. In the course of the cross-examination of appellant and his witnesses, there was evidence adduced that appellant had been paying attention to a certain young lady. He denied that he knew the deceased was also addressing his attentions to her. Later the State introduced testimony to the effect that the deceased had been showing the young lady attention. The ruling of the trial court in admitting this testimony over appellant's objection, is made the subject of complaint. It is insisted that in the absence of evidence that the appellant knew of the deceased's attention to the young lady, proof of it would be irrelevant. Obviously his mind could not be moved to homicide by a matter which to him was unknown.

Wharton on Homicide, Sec. 596; Cockerell v. State, 32 Texas Crim. Rep., 585. Jealousy or the cause for jealousy is uniformly regarded as admissible upon the issue of motive. Wharton on Homicide, Sec. 600; Reeves v. State, 47 Texas Crim. Rep., 340; Wharton's Crim. Evidence, Vol. 2, Sec. 903; Underhill on Crim. Evidence, Sec. 323, p. 565; McCorquodale v. State, 54 Texas Crim. Rep., 344; Moore v. State, 52 Texas Crim. Rep., 336. While knowledge, in the instant case, of the fact that the deceased was a suitor of the same woman to whom appellant's addresses were paid was essential to render the fact relevant, the law did not demand that knowledge be proved by direct testimony. It was susceptible to proof by circumstances. Wharton's Crim. Evidence, vol. 2, p. 903; Kunde v. State, 22 Texas Crim. App., 95.

The fact that the appellant and the deceased each paid their attentions to the same young lady for a period of a month or more would, it seems, furnish some basis for the inference that these attentions were mutually known. Moreover, the dwelling place of the young lady in question was near that of appellant and his mother. She was a companion of appellant's sister. She but a few days prior to the homicide, had been a guest at the home of the mother and of the deceased on the occasion of his birthday. The day before the homicide, the deceased was at the home of appellant's mother to extend to the young lady an invitation to a party. While there appellant was sent for by his mother. Upon learning this the deceased showed uneasiness and manifested a desire to depart, expressing the fear that if he remained, trouble would ensue. The town of McKinney was near the homes of all the parties and was frequented by them for the purpose of trade and amusement. On the day of the homicide, the appellant; his sister, Mrs. Ritter, and her husband; the deceased, and several young ladies of the neighborhood were together at the home of a neighbor.

The deceased was a youth of eighteen years; appellant was thirty-three years of age. They were reared in the same vicinity about three miles apart. The proximity of the homes and places of resort of the appellant and the members of his family and of the deceased and of the young lady, to whom they were both paying attention; the intermingling of their mutual friends and relatives, in connection with the other facts to which we have adverted, occur to us as presenting a situation which, at least, raises an issue of fact, subject to the solution by the jury as to whether the appellant was aware that he and the deceased were paying attention to the same woman. That it was permissible for the State, by competent evidence, to establish as a fact that the appellant and the deceased were, within the knowledge of the. appellant, suitors of the same girl, is clear. This testimony was pertinent to combat the theory of the appellant that the motive for the homicide was the claimed assault upon his sister, and was also relevant upon the issue of motive for the homicide which the State was privi-

leged, though not bound to prove. By the direct testimony, there was put into the case the fact that the attentions of both appellant and deceased were paid to the same girl. The circumstances to which we have adverted tend to prove that this was known to the appellant. Whether they were of sufficient weight was a question of fact, which we think it was not within the province of the court to decide. Upon request, it might have been incumbent upon him to instruct the jury in such a manner as to make them know that the evidence that the deceased was a suitor of the girl could not be considered unless appellant's knowledge of it was established. Such request was not made, and in its absence, its submission was not required, and in fact, the propriety of giving the instruction on his own motion would have been doubtful, for the reason that it would have singled out and given undue prominence to a particular fact.

It was not alone to the evidence concerning the attentions of the appellant and the deceased to the young lady that the jury might have looked in rejecting the defensive theories of the appellant. Ritter, the husband of appellant's sister, and Bevil, his brother-in-law, were charged as co-principals of the appellant in the homicide and were present when it took place. It is from their testimony and of appellant's sister, the wife of Ritter, that reliance is had to establish the misconduct of the deceased towards Mrs. Ritter. Upon the cross-examination of Mrs. Ritter facts touching her conduct after the supposed rape were developed which the jury might have regarded as totally inconsistent with her declarations that the rape had taken place. The time that it occurred, the presence of and proximity to neighbors, who were within calling distance, the failure of Mrs. Ritter to disclose it to any one save those charged with the homicide until after the death of the deceased, her opportunity to reveal it to her mother, her seeming unconstrained conduct in associating with friends and attending a gathering at the home of the neighbor Cage were among the matters which were before the jury. The evidence of threats rested upon the testimony of the same interested witnesses. The alleged demonstration by the deceased and the passage of any words between him and the appellant was contradicted by eyewitnesses, who also testified that no arms were seen in the possession of deceased or found about his body. There was evidence that the appellant, Ritter and Bevil endeavored by threats to force a witness to give false testimony touching the finding of a pistol at the scene of the homicide, and that they took other steps to support this alleged fabrication.

The court submitted to the jury the issue of murder and of manslaughter on insulting conduct towards a female relation; also the law of self-defense, upon both real and apparent danger, instructing in connection therewith upon the right to pursue the deceased and continue to shoot while, as viewed from the standpoint, the danger continued. A separate charge upon the law of communicated threats was given informing the jury of appellant's right to kill the deceased, if, by

some act done, he manifested an intent to execute the threat. None but general exceptions were addressed to the court's charge.

There was no error in refusing to comply with appellant's request to instruct the jury that appellant had a right to seek the deceased for an explanation of his conduct and to arm himself for the occasion. Such a charge might have been proper if there had been any abridgement of qualification of the appellant's right of perfect self-defense. Williford v. State, 38 Texas Crim. Rep., 393; Smith v. State, 81 Texas Crim. Rep., 377.

The charge on threats was not subject to any just criticisms upon the view that it made the appellant's right to act depend upon the belief by the jury that the threats had, in fact, been made. The court told the jury that it was appellant's right to act upon them, "whether made or not," if he had been told that they were made.

The appellant requested the court to charge thus:

". . . and even though you should find and believe from the evidence that at the time the said J. C. Martin commenced to shoot that he did not shoot in self-defense, as explained to you in this charge, and even though you should further find and believe from the evidence that when the defendant J. C. Martin fired the first shot, if he did that his mind was not then aroused by sudden passion or incapable of cool reflection, yet if you further find and believe from the evidence that there was a third shot fired by defendant J. C. Martin, and that the third shot was a fatal shot that killed deceased, and you further find and believe from the evidence that at the time of the firing of the third shot that defendant was at that time aroused by sudden passion and his mind at that time incapable of cool reflection, then under these circumstances you could find defendant guilty of no higher grade of offense than manslaughter."

This special charge precedes upon the theory apparently that though the appellant made an unprovoked attack upon the deceased, justified neither on the theory of self-defense nor manslaughter, and that in this state of mind the first and second shots were fired and death resulted from the third shot, the offense might be mitigated and reduced to the grade of manslaughter, if, between the beginning and the end of the difficulty his mind was rendered, by a sudden passion, incapable of cool reflection. If the appellant began to shoot without justification or excuse and continued to shoot until he slew the deceased, his offense, under the evidence, would be murder, no matter to what degree his passion might have arisen in the meantime. The precision of the special charge as submitting the law of cooling time is not insisted upon. The principle is invoked that though a special charge may be incorrect, it may, nevertheless, serve to direct attention to a sound principle of law and render it incumbent upon the court to embrace it in the charge. Stanley v. State, 62 Texas Crim. Rep., 308.

The adequacy of the special charge to indicate to the trial court that the charge prepared by him was faulty is not apparent. It asserts a principle, as we comprehend it, opposed to that of cooling time, in that it is predicated upon the idea that though when the appellant began the attack, he acted on implied malice, his passion aroused during its progress might reduce the grade of the offense; while the doctrine of cooling time is that while at the beginning he was justifiable, that though he killed after the danger had passed, his passion might have been such as to mitigate the offense. Hobbs v. State, 16 Texas Crim. App., 522; Lagrone v. State, 84 Texas Crim. Rep., 609; Anderson v. State, 87 Texas Crim. Rep., 242. The precedents maintaining this principle will be found to embrace those cases only in which the issue suggested arises from the evidence and not to include those in which the transaction resulting in the death of the deceased was continuous with no interregnum of sufficient importance to raise the question of cooling time. Armstrong v. State, 50 Texas Crim. Rep., 27; Hancock v. State, 47 Texas Crim. Rep., 7; Ivory v. State, 48 Texas Crim. Rep., 281.

In Anderson's case (87 Texas Crim. Rep., 242), according to the State's testimony, the parties were about fifty feet apart. The deceased fell at the first shot. Anderson reloaded and walked to a point near the deceased and fired the second shot. The jury might have believed that the first shot was fired in self-defense but that the danger had ceased when the second shot was fired. It was therefore important that the jury should know that if the mind of the deceased was, by adequate cause, rendered incapable of cool reflection when he killed the deceased, his offense might be manslaughter and not murder. So, in Lagrone's case (84 Texas Crim. Rep., 609), it appeared from the State's evidence that there was an interval between the two shots, in which interval the deceased requested the appellant not to shoot again, stating that he might recover from the wound already received. As said in the case, from this statement the jury might have determined that the danger had ceased and that the appellant had notice thereof.

In the instant case, from the standpoint of the State, the appellant's first offense was murder, whether the deceased was killed by the first or subsequent shots. Appellant's theories were two-fold; that his offense could not be more than manslaughter because of his information touching the insulting conduct towards his female relative, and that the deceased's hostile conduct, coupled with the threats, which had been communicated to the appellant, justified the homicide. Appellant, by his own testimony and that of his witnesses, supported these theories. From his testimony, as he viewed the conduct of the deceased, appellant's life was in danger throughout; the efforts of deceased to draw his weapon were continuous, never ceased, never abated until after the last shot was fired. Unlike the cases of Anderson and Lagrone, it is not clear that the last was the fatal shot. On the con-

trary, the position of the parties facing each other at a few feet distant at the time the first shot was fired, the location and range of the bullet; the powder burns upon the shirt bosom of the deceased, the relative position of the deceased and the appellant during the flight and pursuit; the time that the deceased fell and the manner of his fall, point to the first as the shot that killed him. It may be that this was not conclusive, but in view of the issues made, the testimony adduced. the instructions given, to us it seems clear that the issue of cooling time, if it was in the case, was not of such importance as required the court to instruct upon it in the absence of a specific exception or a definite request.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### February 1, 1922.

HAWKINS, JUDGE.—Appellant has filed a motion for rehearing in which he points out an inaccurate statement in our original opinion, where we said:

"Ritter, the husband of appellant's sister, and Bevil, his brother-in-law were charged as co-principals of the appellant in the homicide and were present when it took place."

The record shows that Ritter and Bevil were present at the time of the homicide, but does not show any legal charge against them as co-principals. We were perhaps caused to make the error by an unchallenged recital in the State's brief.

In another part of our opinion the following statement appears:

"On the day of the homicide the appellant, his sister, Mrs. Ritter, and her husband, the deceased and several young ladies of the neighborhood were together at the home of a neighbor."

Appellant was not present upon the occasion we then had in mind, and what we intended to say was:

"On the day of the homicide appellant's sister (Mrs. Ritter) her husband, the deceased and several young ladies of the neighborhood were together at the home of a neighbor." The mistake evidently occurred in misunderstanding dictation and was not detected by us. We make the correction in order that the opinion may speak the facts.

It is insisted we committed an error in holding that the State could properly introduce evidence showing that deceased and appellant had been paying attention to the same young lady as bearing upon a probable motive for the homicide, because it was not shown by the testimony that appellant was apprised of deceased's attentions. This question was exhaustively considered in our original opinion but in view of the motion we have again examined the statement of facts. The situation of the parties, the relations existing between them, their liv-

ing in the same neighborhood, all could be considered by the jury upon the issue of appellant's knowledge. We find ourselves still unable to agree with the contention urged in the motion, and so ably presented upon the original submission.

The motion for rehearing is overruled.

*Overruled.*