### HENRY PATTERSON V. THE STATE.

No. 10275.   Delivered June 16, 1926.

**1.—Murder — Charge of Court — When Transaction Is Continuous — Held Proper.**

Where, on a trial for murder, where all of the evidence establishes the firing of four or five shots into the body of the deceased, which were fired in rapid succession until all were fired, two of said shots, however, shown to have been fired after deceased fell to the ground, this proof presents one continuous transaction, and the court properly refused to charge the jury that if they did find that appellant was justified in firing the first two shots, but was not justified in firing the last two, then, under all the facts in evidence they might find him guilty only of manslaughter, for firing the last two shots.

**2.—Same—Continued.**

The charge as given directed the attention of the jury to the determination of his mental condition, not at the time of the first shot, or the last shot, but *at the time of the killing*. This was correct. Having affirmatively submitted appellant's theory of manslaughter, no error is disclosed in the court's refusal to differentiate the last two shots, and predicate a manslaughter charge thereon. Distinguishing Ross v. State, 53 Tex.

Crim. Rep. 277; Lagronne v. State, 84 Tex. Crim. Rep. 609; Anderson v. State, 87 Tex. Crim. Rep. 242; and Tait v. State, 97 Tex. Crim. Rep. 119.

### 3.—Same—Charge of Court—Right to Continue to Shoot—Issue Not Raised.

Where it was shown, without contradiction, that appellant fired four or five shots into the body of the deceased, rapidly, and without cessation, and that there was no break in the transaction, a shooting that was over almost as quickly as it was begun, and no evidence of retreat, or abandonment of the difficulty, there was no error in the court's failure to charge the jury that if appellant had the right to fire the first shot, he had the right to continue to shoot as long as it reasonably appeared to him necessary to do so. See Walker v. State, 267 S. W. 990; Coker v. State, 59 Tex. Crim. Rep. 241.

### 4.—Same—Charge of Court—On Manslaughter—No Error Shown.

Where the court, in submitting the issue of appellant's guilt of manslaughter, told the jury that before they could convict, on the facts stated, that they must believe beyond a reasonable doubt that there was the assault referred to, or the existence of other adequate cause, and that by reason of same the mind of the appellant was aroused to such a degree of passion, etc., as to render it incapable of cool reflection, etc., this was a correct presentation under the facts shown, of the issue of appellant's *guilt* of manslaughter, and not of his defense of manslaughter.

### 5.—Same—Severance—Dismissal as to Co-Defendant—Held Proper.

Where one Young was indicted for complicity with appellant in the commission of the homicide, when the case of appellant was called for trial he sought, by motion for a severance, to have Young tried first, but the state dismissed its case against Young, there being nothing thereunder indicating bad faith on the part of the state in dismissing the case against Young, the procedure was proper. Following Jones v. State, 214 S. W. 322, and the authorities therein cited.

### 6.—Same—Evidence—Of Animus—Properly Received.

Where it was in evidence, as bearing upon appellant's animus toward deceased, that appellant and others had executed a note to deceased, which appellant had refused to pay, which appellant testified that deceased had threatened to kill him if he did not pay, and it was further shown that deceased had sold and transferred this note to one Nesbit, there was no error in permitting the state to show that the appellant met Nesbit a short while before the homicide and refused to speak to him, and seemed angry and "swelled up."

### 7.—Same—Evidence—Cross-Examination—Properly Excluded.

Where deceased's mother had testified on behalf of the state, there was no error in refusing to permit the appellant on cross-examination to enquire of her in reference to some allegations made in a civil suit, wherein she averred that deceased was a spendthrift, and had taken advantage of his grandmother, and run through with her property, such cross-examination not being in any manner germane to any issue raised on the trial.

ON REHEARING.

### 8.—Same—Request to Withdraw Motion—Granted.

After having filed his motion for a rehearing, appellant now files his

personal affidavit advising the court that he desires to withdraw the motion, his request is granted.

Appeal from the District Court of Rusk County.   Tried below before the Hon. R. T. Brown, Judge.

Appeal from a conviction of murder, penalty twenty-five years in the penitentiary.

The opinion states the case.

*Futch & Cooper* of Henderson, and *W. B. Baker* of Carthage, for appellant.

*Alex Pope* of Dallas, *C. L. Stone* of Austin, *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.   On right of appellant to continue to shoot as long as danger existed, the state cites:

Overcash v. State, 67 Tex. Crim. Rep. 181.
Clark v. State, 56 Tex. Crim. Rep. 295.
Best v. State, 61 Tex. Crim. Rep. 554.
Smith v. State, 57 Tex. Crim. Rep. 455.

LATTIMORE, Judge.—Conviction in District Court of Rusk County of murder; punishment fixed at twenty-five years in the penitentiary.

The killing occurred at the little town of Tatum where deceased lived.   Appellant was a tenant on a farm belonging to the mother of deceased, and his name appeared on a note given to deceased by the Nix brothers, purchasers of some mules from deceased.   The note had been sold by deceased to Mr. Nesbitt, or the bank of which Mr. Nesbitt was an officer.   Appellant had denied the execution of said note.   According to his contention deceased had tried to force him to pay the note and eventually had threatened to kill him if he did not pay it.   Without further details, on the day of the homicide appellant, with a pistol on his person, drove first to Beckville, in which little town was situated the bank where his note had been sold.   About one o'clock he left Beckville and drove seven miles to Tatum.   Soon after reaching Tatum he and deceased met and the homicide occurred.

The theory of the state was that appellant began the attack by striking deceased with his fist, to which deceased replied by a blow with his fist.   One Young, who was with appellant, then caught deceased and was holding him when appellant fired sev-

eral shots; that at the second shot deceased "crumpled down"; that appellant fired two more bullets into the body of deceased. According to state witnesses the mother of deceased "went down with him in her arms" asking appellant not to shoot him any more, but appellant stepped around her and fired the last two shots in rapid succession. Four or five shots were fired, and four bullets entered the body of deceased, apparently any one of which would have been fatal.

The theory of the defense, supported by the testimony of appellant and his witnesses, was that deceased struck appellant a blow in the face with his fist, then clinched, holding appellant in such position as that he could not see what deceased was doing; that hearing the mother of deceased cry out, "Oh, Angus, don't do that," and having in mind threats made by deceased to kill, believing that deceased was about to execute said threats, he drew his pistol and fired it several times into the body of deceased till the latter turned him loose, when appellant walked across the street.

Appellant's witnesses affirmed that the shooting was continuous and in self-defense. The state witnesses affirmed that there was not more than thirty seconds between the first and last shots, one saying that not more than ten seconds intervened, another that but a few seconds elapsed, another that all the shots were "immediately," and another that there was not more than thirty seconds between the first and last shots.

Based apparently on the testimony of two state witnesses that when deceased and his mother went down together, appellant stepped around the mother and fired the last two shots, appellant contends that it was error for the trial court to fail to give an instruction under which the jury might have found him guilty only of manslaughter, based on the firing of the last two shots. The contention is that the jury may have believed appellant justified in firing the first shots but not justified in firing the last two, and in such case they may have held him only guilty of manslaughter in firing the last two shots. We are not able to follow appellant's reasoning. There is not a word of testimony indicating that deceased was not killed by the shots fired before the last two. In fact, the strong indications are to the contrary. At the second shot, according to the state witnesses, deceased crumpled down upon the ground and no movement of his afterwards was related by any witness. As above stated, four bullets entered his body, and nothing remotely suggests that the last two shots were fatal and the others not. The state witnesses relate a continuous transaction, a firing as fast

as the circumstances would permit, and the record is bare of facts indicating any change of mind or purpose on the part of appellant throughout the transaction. There was no cooling time, and if the court had charged on same as against appellant, we would likely have held this erroneous.

The court charged on manslaughter, and told the jury that if they found that deceased assaulted appellant, causing pain or bloodshed, or that by reason of great superiority of strength, etc., there was aroused in appellant's mind such degree of anger, rage, etc., as to render it incapable of cool reflection * * * and that he shot and killed deceased under such circumstances, he would be guilty only of manslaughter. The court also told the jury that in determining the condition of appellant's mind *at the time of the killing*, they should consider all the facts and circumstances in evidence. We believe this gave to appellant all he was entitled to in this regard. He did not make any claim that the evidence showed that one of the last two shots fired was the fatal shot. The charge as given directed the attention of the jury to the determination of his mental condition — not at the time of the first shot, or the last shot,—but *at the time of the killing*. This was correct. Why seek to invade the province of the jury by attempting to state a rule applicable also to the last shots, when no human brain could find room for a belief that said shots killed deceased?

Whether the jury found that the killing was done by the second shot, or one of the other shots, they were specifically told that if *at the time of such killing,* by reason of an assault or other cause the mind of the appellant was then so aroused, etc., they should find him guilty only of manslaughter. The facts of each case determine the law applicable, and we are unable to agree that the cases cited by appellant, to-wit: Ross v. State, 53 Tex. Crim. Rep. 277; Lagrone v. State, 84 Tex. Crim. Rep. 609; Anderson v. State, 87 Tex. Crim. Rep. 242, and Tait v. State, 97 Tex. Crim. Rep. 119, are analogous in facts to the one now before us, or that same lay down any rule which would have application here and require the court to go beyond what he did in his charge on manslaughter. In the Ross case, supra, after the first difficulty the accused went to her work some distance away, and came back later and renewed the difficulty. We held it was error for the court to give a charge denying her any right based on what occurred before she went away. The opinion in the Lagrone case, supra, gives us no information as to the length of time that elapsed between the first and last shots, or how much the attitude of the parties may have

changed, but the court suggests in said opinion that the first shot was not fatal, and that after it was fired deceased begged appellant not to shoot him again.   So in the Anderson case, supra, the court calls attention to the fact that the first shot did not kill, and probably would not have killed, and manifestly the transaction showed no continuous shooting.   In the Tait case, supra, there was no charge on manslaughter at all and for this error the judgment was reversed.   It thus appears that there is a very clear difference between each of the cases just referred to, on its facts, and the case now before us.   Several of the cases mentioned refer to Hobbs v. State, 16 Tex. Crim. App. 517, and the rule there announced.   We think the Hobbs case correct in principle, but know of no case, and believe none can be found, holding that where more than one shot is fired or blow struck in a continuous transaction, and nothing in the case supports any belief that death resulted or the injury was inflicted by one shot more than another, the court should attempt to differentiate between the law applicable to the first and last shot or blow.   In Hobbs case, supra, a threat and threatening motion was made by one M, who was one of two men found in a railroad yard by the accused, who was night watchman. Thinking himself in danger from M the accused drew a pistol and fired, striking M in the arm; both M and W, his companion, fled and Hobbs fired two more shots, both of which struck W.   Hobbs was charged with assault to murder W.   He asked a charge on aggravated assault, based on the proposition that even though W had done nothing to him, yet under the excitement, rage, etc., brought about by the threatened attack of M, the mind of Hobbs was in such condition as to render it incapable of cool reflection when he fired the shots, which struck W.   We hold that the court should have given a charge on aggravated asault, but it needs no reasoning to show that the facts and the law applicable to that case are wholly different from this.   The court in his charge having fully stated and applied the law of manslaughter, we find nothing in appellant's complaint.

Nor are we able to agree with the second contention made by appellant, which is that it was error for the court below not to charge that he had a right to shoot and to continue to shoot in his own self-defense as long as it reasonably appeared to him necessary so to do.   Certainly a refusal to so charge transgressed no theory raised by the testimony of the defense.   Based on threats and apparent danger, appellant and his witnesses claimed that he fired rapidly and continuously.   The theory of self-

defense based on threats and apparent danger was fully submitted without limitation of any character. The court repeatedly told the jury that if from appellant's standpoint at the time it reasonably appeared to him that he was in danger of serious bodily injury or loss of life, he had the right to shoot and kill the deceased. There was no charge on abandonment of the difficulty or cooling time. We perceive no facts coming from state witnesses calling for the charge under discussion. As above stated, appellant fired four or five shots apparently as fast as the circumstances would allow, he and his witnesses claiming that deceased was holding him during all this firing; the state witnesses claiming that he fired four or five shots into the body of deceased without any cessation save that made necessary by having to step around the body of deceased's mother as she went to the ground with her son. No witness either for the state or the defense affirmed that there was any break in the transaction, or that it was more than half a minute from the first shot until the shooting was over. A mere failure to charge on any particular theory cannot be held reversible error by us, unless in some way we can perceive that same may have resulted in injury. A shooting that was over almost as quickly as it was begun, and facts showing no retreat or abandonment of the difficulty, would hardly seem to call for a reversal because of the failure of the court to charge on the right to shoot and continue to shoot. Walker v. State, 267 S. W. 990; Coker v. State, 59 Tex. Crim. Rep. 241.

There is complaint that the charge on manslaughter shifts the burden of proof. We think appellant misapprehends the charge. Whenever in homicide cases the issue of manslaughter arises, it is the plain duty of the trial court to tell the jury that before they can convict, they must believe beyond a reasonable doubt the existence of those facts which if so believed make him guilty of manslaughter. The same principle applies here that applies in the submission of the law of every criminal case. In paragraph 15 of the charge the court was submitting to the jury the question of appellant's guilt of manslaughter, and he properly told them that before they could convict on the facts stated, they must believe beyond a reasonable doubt that there was the assault referred to, or the existence of other adequate cause, and that by same the mind of appellant was aroused to such a degree of passion, etc., as to render it incapable of cool reflection, etc. In the cases cited as supporting appellant's contention in this matter, the trial court was submitting some

defensive theory of the accused and was not, as in the instant matter, submitting the question of guilt of a violation of the law.

One Young was indicted for complicity in this homicide. Appellant sought by motion for severance to have Young tried first. The motion was acquiesced in, but the state dismissed its case against Young. Thereafter appellant offered Young as a witness in his behalf, but he refused to testify on the ground that he might thereby incriminate himself. Appellant then asked that his case be postponed until the question of Young's guilt could be settled. This was refused. We have carefully examined the bill of exceptions presenting this complaint and find nothing therein indicating bad faith on the part of the state in dismissing the case against Young. We think the question settled against appellant in Jones v. State, 214 S. W. 322, and the authorities therein cited.

The mule note given by appellant and the Nix brothers to deceased, the execution of which was denied by appellant, and which had been sold to Mr. Nesbitt, was introduced in evidence. Appellant had testified to threats made by deceased to kill him if he did not pay this note. It was a reasonable inference that much of the supposed hard feeling between the men grew out of appellant's refusal to pay the note. As stated above, the note was held by a Beckville bank of which Mr. Nesbitt was an officer. On the day of the homicide appellant left his home and went to Beckville, leaving there some two hours before the homicide. The state was permitted to show that shortly before leaving Beckville appellant twice met Mr. Nesbitt, the holder of such note, and refused to speak to him and seemed angry or "swelled up." No other cause for anger or ill feeling towards Nesbitt on the part of appellant appears save the connection of Nesbitt with said note and the threats to kill him. As reflecting appellant's temper and feeling in the matter, we think it not erroneous for the state to prove his action toward Nesbitt on the same day of the homicide and shortly prior thereto. According to the state's theory, appellant's anger and resentment toward deceased growing out of said note transaction was an element that figured largely in his malicious killing of deceased. We think his anger and resentment toward the other party occupying somewhat the same attitude toward the note as did deceased, might shed light upon his attitude in the killing. Neither of the cases cited by appellant appear to us to be pertinent on this point.

We deem it not necessary to discuss bills of exception Nos. 7

and 8.  Appellant's wife testified that she was present at the shooting and went with her husband after same to Dr. Menefee's office.  The state asked her some questions relative to what took place in said office.  This was objected to on the ground that the defense had not brought out anything on direct examination that occurred in said office. The objections were sustained.  The bills present no error.

Bill of exceptions No. 9 was reserved to the refusal of the court to allow appellant to ask Mrs. Miller, mother of deceased, when on the witness stand, in reference to some allegations made in a civil suit wherein she averred that deceased was a spendthrift and had taken advantage of his grandmother and had run through with her property, etc.  We see no phase of the case to which such proof could be held material.

We have given as careful consideration as we can to each point raised by appellant and find ourselves unable to believe that any of them present error calling for a reversal.

Being of opinion that appellant has had the character of trial guaranteed him and that no reversible error appears, the judgment will be affirmed.

*Affirmed.*

HAWKINS, JUDGE.—Appellant is under conviction for murder with punishment assessed at twenty-five years' confinement in the penitentiary.

An opinion has heretofore been handed down by this court affirming the judgment and the matter is now pending on motion for rehearing filed by appellant.  He now files his personal affidavit advising the court that he desires to withdraw the motion and no longer prosecute the appeal.

Complying with his request permission is granted for the withdrawal of his motion, and it is directed that mandate issue under the original opinion.

*Motion withdrawn.*